J. Brian McTigue (D.C. Bar No. 475904) bmctigue@mctiguelaw.com
Gregory Y. Porter (D.C. Bar No. 458603)  gporter@mctiguelaw.com
MCTIGUE & PORTER LLP
5301 Wisconsin Avenue, NW
Suite 350
Washington, DC  20015
Tel:  (202) 364-6900
Fax: (202) 364-9960

Attorneys for Plaintiff Yvonne Gipson

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Yvonne Gipson<br>1404 Chesapeake Avenue<br>Annapolis, MD 21403,<br>*and all others similarly situated*,<br><br>　　　　Plaintiffs,<br><br>　　　　　　　v.<br><br>Wells Fargo & Company, Wells Fargo Bank, N.A.,<br>Employee Benefit Review Committee, *and* John Does<br>1-20, *et al.*<br><br>　　　　Defendants. | CLASS ACTION COMPLAINT |

This action involves the Wells Fargo & Company 401(k) Plan (the "401(k) Plan"), which is sponsored by Wells Fargo & Company ("Wells Fargo").  Plaintiff Yvonne Gipson alleges the following on behalf of herself and a class of similarly-situated participants in the 401(k) Plan.

## I. NATURE OF THE ACTION

1.　　　　This case is about self-dealing and imprudent investment of pension plan assets. The Employee Benefit Review Committee (the "Benefit Committee"), on information and belief comprised of Wells Fargo officers and employees, was responsible for selecting and monitoring 401(k) Plan investments.  The Benefit Committee also was responsible for selecting service providers to the 401(k) Plan such as trustees.  As a fiduciary for the 401(k) Plan, the Benefit Committee (and its members) was required by the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, to act prudently and solely in the interest of the 401(k) Plan and its participants and beneficiaries when selecting investments, products, and services for the 401(k) Plan. It did not do so. Instead, it put Wells Fargo's interests ahead of the 401(k) Plan's interests by choosing investment products and pension plan services offered and managed by Wells Fargo subsidiaries and affiliates, which generated substantial revenues for Wells Fargo at great cost to the 401(k) Plan.

2.      Purportedly acting on behalf of the 401(k) Plan, the Benefit Committee chose: mutual funds established, offered, and advised by Wells Fargo Funds Management LLC ("Wells Funds Management") under the Wells Fargo Advantage Funds brand ("Wells Funds") and trustee services provided by Wells Fargo Bank, N.A. ("Wells Bank"). These entities were affiliates or subsidiaries of Wells Fargo during the Class Period (2001 to the present).

3.      By selecting Wells Funds, the Benefit Committee placed Wells Fargo's interests above the 401(k) Plan's interests. Instead of selecting investments for the 401(k) Plan based on objective criteria like fees and performance, the Benefit Committee selected Wells Funds because those funds generated substantial revenues for Wells Fargo. Unaffiliated investment products, however, do not generate any fees for Wells Fargo. So, the Benefit Committee chose Wells Funds to benefit Wells Fargo, the sponsor of the 401(k) Plan.

4.      The Benefit Committee also caused the 401(k) Plan to contract with Wells Bank for trustee services.

5.      This is a civil enforcement action under the ERISA, and in particular under ERISA §§ 404, 406, and 409, 29 U.S.C. §§ 1104, 1106 and 1109, for losses to the 401(k) Plan caused by the Benefit Committee's breaches of fiduciary duty and violations of ERISA's prohibited transactions provisions.

6.     This class action is brought on behalf of the 401(k) Plan and its approximately 164,000 participants for losses to the 401(k) Plan caused by the Benefit Committee's conflicted and imprudent selection of investments and services for the 401(k) Plan.

7.     The Benefit Committee, which is a fiduciary of the 401(k) Plan, violated ERISA § 406, 29 U.S.C. § 1106, which prohibits transactions between a plan and related parties, by causing the 401(k) Plan to invest in Wells Funds and purchase investment management and other products and services from Wells Fargo subsidiaries and affiliates.

8.     The Benefit Committee also violated ERISA § 404, 29 U.S.C. § 1104 by failing to act solely in the interest of the 401(k) Plan and its participants and beneficiaries of the 401(k) Plan and failing to exercise the required care, skill, prudence, and diligence in investing the assets of the 401(k) Plan.  The Benefit Committee caused the 401(k) Plan to purchase shares, units, or interests in Wells Funds, which funds charged significantly higher fees than comparable, unaffiliated funds, while offering mediocre returns.  In other words, the Benefit Committee placed the company's interest in generating fees ahead of the 401(k) Plan's interest in making prudent investments at reasonable cost.

9.     The Benefit Committee's breaches of fiduciary duty caused losses to the 401(k) Plan for which the Benefit Committee and its members are liable to the 401(k) Plan and its participants pursuant to §§ 409 and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109 and 1132(a)(2).

10.     Wells Bank is liable pursuant to §§ 405(a)(1),(3), 409, and 502(a)(2) of ERISA, 29 U.S.C. §§ 1105(a)(1), (3), 1109 and 1132(a)(2) because it is a co-fiduciary of the 401(k) Plan and knowingly participated in the Benefit Committee's breaches by transacting with the 401(k) Plan and made no effort to remedy the Benefit Committee's breaches.

11.     Wells Fargo knowingly participated in and benefited from the Benefit Committee's violations of ERISA and is liable under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).  Accordingly, Wells Fargo should disgorge all revenues earned from 401(k) Plan business and profits earned by Wells Fargo on those revenues.

## II. JURISDICTION AND VENUE

12.     ERISA provides for exclusive federal jurisdiction over these claims.  The 401(k) Plan is an "employee benefit plan" within the meaning of § 3(3) of ERISA, 29 U.S.C. § 1002(3), and Plaintiff is a "participant" within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7), who is authorized pursuant to § 502(a)(2) and (3) of ERISA, 29 U.S.C. § 1132(a)(2) and (3) to bring the present action on behalf of the participants and beneficiaries of the Salaried Plan to obtain appropriate relief under §§ 502 and 409 of ERISA, 29 U.S.C. §§ 1132 and 1109.

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

14.     This Court has personal jurisdiction over defendants because the Court has subject matter jurisdiction under ERISA.

15.     Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because Wells Fargo and/or Wells Bank maintain multiple offices in this district and employ many participants in the 401(k) Plan in this district who receive information about the 401(k) Plan, including but not limited to Summary Plan Descriptions, prospectuses, and account statements in this district.

### III. PARTIES

**A.     Plaintiff.**

16.     **Plaintiff Yvonne Gipson ("Gipson").**  Plaintiff Gipson is a resident of

Annapolis, MD.  Plaintiff Gipson also maintains a place of business at 2808 Douglas Street,

N.E., Washington, D.C. 20018-1553.  Plaintiff Gipson is a participant in the 401(k) Plan.

**B.     Defendants.**

17.     **Defendant Wells Fargo & Company ("Wells Fargo").** Wells Fargo is the

sponsor of the 401(k) Plan and, thus, by definition, a party in interest to the 401(k) Plan under

ERISA.

18.     **Defendant Wells Fargo Bank, N.A. ("Wells Bank").**  Wells Bank is a federally-

chartered bank and wholly-owned subsidiary of Wells Fargo.  Wells Bank is the trustee of the

401(k) Plan.  Wells Bank holds and invests the assets of the 401(k) Plan.

19.     **Defendant Employee Benefit Review Committee ("Benefit Committee").**  The

Benefit Committee selects the investments offered under the 401(k) Plan.  The Benefit

Committee's members are appointed by the Board of Directors of Wells Fargo.

20.     **Doe Defendants.**  Doe Defendants include individual members of the Benefit

Committee and other fiduciaries and parties in interest whose names and identities are not

presently known to plaintiff.

### IV. FACTUAL BACKGROUND

**A.     The 401(k) Plan.**

21.     The 401(k) Plan is an "employee pension benefit plan" within the meaning of

ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and a defined contribution plan within the meaning of

ERISA § 3(34), 29 U.S.C. § 1002(34).  Pursuant to ERISA, the relief requested in this action is

for the benefit of the 401(k) Plan.

22.     The 401(k) Plan covers eligible employees of Wells Fargo and its subsidiaries and affiliates.

23.     Wells Fargo is the sponsor of the 401(k) Plan.

24.     The Benefit Committee is responsible for selecting 401(k) Plan investment options and service-providers.

25.     Wells Bank is the Trustee for the 401(k) Plan.  The 401(k) Plan pays fees, directly or indirectly, to Wells Bank.  Wells Bank holds and invests the assets of the 401(k) Plan.

26.     The 401(k) Plan has invested, pursuant to the direction of the Benefit Committee, billions of dollars in Wells Funds, which investments have generated millions of dollars of investment advisory and other fees for Wells Fargo.  During the Class Period, 2001 to the present, the 401(k) Plan's investment in Wells Funds averaged almost $1.6 billion a year.

27.     The 401(k) Plan's investments in Wells Funds substantially under-performed similar products available from unaffiliated investment managers and resulted in tens of millions of dollars in losses to the 401(k) Plan.

**B.      Defendants Are Fiduciaries And Parties In Interest.**

28.     ERISA requires every plan to provide for one or more named fiduciaries of the Plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).

29.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions.  ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) (stating that a person is a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . .").

30.    The Benefit Committee and its members are fiduciaries to the 401(k) Plan and owe fiduciary duties to the 401(k) Plan and its participants under ERISA in the manner and to the extent set forth in the documents governing the 401(k) Plan, through their conduct, and under ERISA.

31.    The Benefit Committee and its members exercise discretionary authority and control over the 401(k) Plan by, among other things, determining and overseeing the 401(k) Plan's investments, policies, and performance, as well as the performance of other fiduciaries to the 401(k) Plan.  The duties of the Benefit Committee and its members include selecting, monitoring, and deleting the 401(k) Plan's investments.

32.    On information and belief, the members of the Benefit Review Committee are officers and employees of Wells Fargo.

33.    Wells Fargo is the sponsor of the 401(k) Plan and, thus, by definition a party in interest.

34.    Wells Bank is the trustee for the 401(k) Plan and, thus, by definition a fiduciary of the 401(k) Plan.

**C.    Defendants' ERISA Violations.**

35.    Among other things, the Benefit Committee and its members are responsible for selecting investments and service-providers for the 401(k) Plan, which selections must be made prudently and solely in the interest of the 401(k) Plan's participants and beneficiaries.

36.    The Benefit Committee and its members had the sole discretion to select the investments available under the 401(k) Plan.  Over many years, the Benefit Committee and its members used that discretion to direct billions of dollars of 401(k) Plan assets into Wells Funds.

37.    Wells Fargo subsidiaries and affiliates, chiefly Wells Funds Management and Wells Bank, received tens of millions of dollars in annual fees from the 401(k) Plan.

38.     The Benefit Committee and its members knew or should have known by virtue of their senior positions at a large financial services company that comparable investment funds and retirement trustee services were available from unaffiliated entities.

39.     The 401(k) Plan's investments in the Wells Funds were prohibited transactions under ERISA, as were the payment of fees to other Wells Fargo subsidiaries and affiliates like Wells Bank.

40.     The 401(k) Plan has suffered millions of dollars a year in losses because the Benefit Committee and its members forced the 401(k) Plan to invest billions of dollars in Wells Funds, which resulted in millions of dollars of revenue for Wells Fargo while delivering poor investment returns for the 401(k) Plan.  ERISA prohibits a plan from investing in the plan sponsor's investment products or paying the plan sponsor fees for services provided to the plan unless the fiduciary or sponsor can prove that the transactions are exempt.  Even if the Benefit Committee and its members can prove the transactions are exempt from ERISA § 406, 29 U.S.C. § 1106, ERISA does not permit such arrangements when they are not solely in the interest of the plan or when a prudent, unconflicted fiduciary would choose differently.

41.     Wells Fargo, as plan sponsor, was a party in interest.  Wells Fargo, through its Board of Directors, also appointed and monitored the members of the Benefit Committee.  Wells Fargo knew or should have known that the Benefit Committee and its members were breaching their duties under ERISA and engaging in prohibited transactions by causing the 401(k) Plan to do business with Wells Fargo subsidiaries and affiliates.  In fact, Wells Fargo welcomed and participated in the Plan Administrators' violations of ERISA, and must disgorge all monies received from the 401(k) Plan and profits earned by Wells Fargo thereon.

42.     Wells Bank, as trustee for the 401(k) Plan, was a fiduciary to the 401(k) Plan.  It

benefited from and executed hundreds if not thousands of transactions between the 401(k) Plan

and Wells Bank and Wells Funds.  Wells Bank knew or should have known that the Benefit

Committee and its members were breaching their duties under ERISA and engaging in

prohibited transactions by causing the 401(k) Plan to do business with Wells Fargo subsidiaries

and affiliates.

## V. ERISA'S FIDUCIARY STANDARDS & PROHIBITED TRANSACTIONS

43.     ERISA imposes strict fiduciary duties of loyalty and prudence upon the

Defendants as fiduciaries of the Plan.   ERISA § 404(a), 29 U.S.C.§ 1104(a), states, in relevant

part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the
> interest of the participants and beneficiaries and —
>
> (A)     for the exclusive purpose of
>
> > (i)      providing benefits to participants and their beneficiaries;
> > and
> >
> > (ii)     defraying reasonable expenses of administering the plan;
>
> (B)     with the care, skill, prudence, and diligence under the
> circumstances then prevailing that a prudent man acting in a like
> capacity and familiar with such matters would use in the conduct
> of an enterprise of like character and with like aims;
>
> (C)     by diversifying the investments of the plan so as to minimize the
> risk of large losses, unless under the circumstances it is clearly
> prudent not to do so; and
>
> (D)     in accordance with the documents and instruments governing the
> plan insofar as such documents and instruments are consistent with
> the provisions of this title and Title IV.

44.     ERISA also imposes explicit co-fiduciary duties on plan fiduciaries.  ERISA

§ 405, 29 U.S.C. § 1105, states, in relevant part, that:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1)    if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or

(2)    if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)    if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

45.    Under ERISA, fiduciaries that exercise discretionary authority or control over the selection of plan investments and the selection of plan service providers must act prudently and solely in the interest of participants in the plan when selecting investments and retaining service providers.  Thus, "the duty to conduct an independent investigation into the merits of a particular investment" is "the most basic of ERISA's investment fiduciary duties."  *In re Unisys Savings Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996).  As the Department of Labor explains,

[T]o act prudently, a plan fiduciary must consider, among other factors, the availability, riskiness, and potential return of alternative investments for his or her plan. [Where an investment], if implemented, causes the Plan to forego other investment opportunities, such investments would not be prudent if they provided a plan with less return, in comparison to risk, than comparable investments available to the plan, or if they involved a greater risk to the security of plan assets than other investments offering a similar return.

DoL Ad. Op. No. 88-16A.

46.    Pursuant to these duties, fiduciaries must ensure that the services provided to the plan are necessary and that the fees are reasonable:

Under section 404(a)(1) of ERISA, the responsible Plan fiduciaries must act prudently and solely in the interest of the Plan participants and beneficiaries both in deciding … which investment options to utilize or make available to Plan

participants or beneficiaries. In this regard, the responsible Plan fiduciaries must
assure that the compensation paid directly or indirectly by the Plan to [service
providers] is reasonable … .

DoL Ad. Op. 97-15A; DoL Ad. Op. 97-16A

47.    A fiduciary's duty of loyalty requires a fiduciary to act solely in the interest of

plan participants and beneficiaries.  As the Department of Labor has repeatedly warned:

> We have construed the requirements that a fiduciary act solely in the interest of,
> and for the exclusive purpose of providing benefits to, participants and
> beneficiaries as prohibiting a fiduciary from subordinating the interests of
> participants and beneficiaries in their retirement income to unrelated objectives.
> Thus, in deciding whether and to what extent to invest in a particular investment,
> a fiduciary must ordinarily consider only factors relating to the interests of plan
> participants and beneficiaries in their retirement income. A decision to make an
> investment may not be influenced by [other] factors unless the investment, when
> judged solely on the basis of its economic value to the plan, would be equal or
> superior to alternative investments available to the plan.

DoL Ad. Op. No. 98-04A; DoL Ad. Op. No. 88-16A.

48.    The Department of Labor counsels that fiduciaries are responsible for ensuring

that a plan pays reasonable fees and expenses and that fiduciaries need to carefully evaluate

differences in fees and services between prospective service providers:

> While the law does not specify a permissible level of fees, it does require that fees
> charged to a plan be "reasonable." After careful evaluation during the initial
> selection, the plan's fees and expenses should be monitored to determine whether
> they continue to be reasonable.

> In comparing estimates from prospective service providers, ask which services are
> covered for the estimated fees and which are not. Some providers offer a number
> of services for one fee, sometimes referred to as a "bundled" services
> arrangement. Others charge separately for individual services. Compare all
> services to be provided with the total cost for each provider. Consider whether the
> estimate includes services you did not specify or want. Remember, all services
> have costs.

> Some service providers may receive additional fees from investment vehicles,
> such as mutual funds, that may be offered under an employer's plan. For example,
> mutual funds often charge fees to pay brokers and other salespersons for
> promoting the fund and providing other services. There also may be sales and
> other related charges for investments offered by a service provider. Employers

should ask prospective providers for a detailed explanation of all fees associated with their investment options.

*Meeting Your Fiduciary Responsibilities* (May 2004) (available at

http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html).

In a separate publication, the Department of Labor writes:

> Plan fees and expenses are important considerations for all types of retirement plans. As a plan fiduciary, you have an obligation under ERISA to prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to your plan. Understanding and evaluating plan fees and expenses associated with plan investments, investment options, and services are an important part of a fiduciary's responsibility. This responsibility is ongoing. After careful evaluation during the initial selection, you will want to monitor plan fees and expenses to determine whether they continue to be reasonable in light of the services provided.

> * * *

> By far the largest component of plan fees and expenses is associated with managing plan investments. Fees for investment management and other related services generally are assessed as a percentage of assets invested. Employers should pay attention to these fees. They are paid in the form of an indirect charge against the participant's account or the plan because they are deducted directly from investment returns. Net total return is the return after these fees have been deducted. For this reason, these fees, which are not specifically identified on statements of investments, may not be immediately apparent to employers.

*Understanding Retirement Plan Fees and Expenses* (May 2004) (available at

http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html.)

49.    A fiduciary's duty of loyalty and prudence require it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result, or would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(1)(d), 29 U.S.C. § 1104(a)(1)(D).  Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor allow others, including those whom they direct or who are directed by plan documents to do so.

50.    The general duties of loyalty and prudence imposed by § 404 of ERISA are supplemented by a detailed list of transactions that are expressly prohibited by § 406 of ERISA, 29 U.S.C. § 1106, and are considered "*per se*" violations because they entail a high potential for abuse.  Section 406(a)(1) provides, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
>
> (A)    sale or exchange, or leasing, of any property between the plan and a party in interest;
>
> * * *
>
> (C)    furnishing of goods, services, or facilities between the plan and a party in interest … .

Section 406(b) provides, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not—
>
> (1)    deal with the assets of the plan in his own interest or for his own account,
>
> (2)    in his individual or in any other capacity act in a transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries …

51.    ERISA's prohibited transaction provisions thus prohibit fiduciaries, such as the Defendants here, from causing plans to engage in transactions with the plan sponsor, here Wells Fargo, including causing a plan to invest assets in investment management and other products offered by a party in interest or plan fiduciary and the payment of investment management and other fees in connection with such investments.

52.    Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides a cause of action against a party in interest, such as Wells Fargo, for participating in the breach of a fiduciary.

53.    Section 405(a) of ERISA, 29 U.S.C. § 1105(a), provides a cause of action against a fiduciary, such as Wells Bank, for knowingly participating in the breach of a fiduciary and knowingly failing to cure any breach of duty.

## VI. CLASS ALLEGATIONS

54.    Representative Plaintiff brings this action on behalf of a class defined as:

> All participants in the Wells Fargo 401(k) Plan from 2001 to the present.

55.    Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1), (b)(2), and/or (b)(3).

56.    The class satisfies the numerosity requirement because it is composed of thousands of persons, in numerous locations. The 401(k) Plan has almost 165,000 participants. The number of class members is so large that joinder of all its members is impracticable.

57.    Common questions of law and fact include:

A.    Whether defendants caused the 401(k) Plan to invest its assets in mutual funds and other investment products offered or managed by Wells Fargo subsidiaries and affiliates;

B.    Whether the Benefit Committee and its members were fiduciaries responsible for selecting, evaluating, and monitoring the investments of the 401(k) Plan;

C.    Whether defendants caused the 401(k) Plan to pay fees to Wells Fargo subsidiaries and affiliates, including Wells Bank, for trustee, record-keeping, plan administration and other such services and whether such fees were reasonable;

D.    Whether the Benefit Committee and its members breached their fiduciary duties to the 401(k) Plan and engaged in prohibited transactions by causing the 401(k) Plan to invest its assets in mutual funds and other investment products offered or

managed by Wells Fargo subsidiaries and affiliates, and whether such fees were reasonable; and

  E. Whether the 401(k) Plan and its participants suffered losses as a result of the Benefit Committee's and its members' fiduciary breaches;

  F. Whether Wells Fargo is liable to disgorge fees collected from the 401(k) Plan and profits earned thereon.

  G. Whether Wells Bank breached its co-fiduciary duties under ERISA by knowingly participating in the Benefit Committee's and its members' fiduciary breaches and prohibited transactions and failing to take steps to prevent such breaches or prohibited transactions.

58. Plaintiff's claims are typical of the claims of the Class.  She has no interests that are antagonistic to the claims of the Class.  She understands that this matter cannot be settled without the Court's approval.  Plaintiff is not aware of another suit pending against defendants arising from the same circumstances.

59. Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is committed to the vigorous representation of the Class.  Plaintiff's counsel, McTigue & Porter LLP, are experienced in class action and ERISA litigation.  Counsel have agreed to advance the costs of the litigation contingent upon the outcome.  Counsel are aware that no fee can be awarded without the Court's approval.

60. A class action is the superior method for the fair and efficient adjudication of this controversy.  Joinder of all members of the class is impracticable.  The losses suffered by some of the individual members of the Class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their

rights.  Moreover, the Benefit Committee and its members, as fiduciaries of the 401(k) Plan,
were obligated to treat all Class members similarly as 401(k) Plan participants under written plan
documents and ERISA, which impose uniform standards of conduct on fiduciaries.  Individual
proceedings, therefore, would pose the risk of inconsistent adjudications.  Plaintiffs are unaware
of any difficulty in the management of this action as a class action.

61.     This Class may be certified under Rule 23(b).

A.      23(b)(1).  As an ERISA breach of fiduciary duty action, this action is a
classic 23(b)(1) class action.  Prosecution of separate actions by individual members
would create the risk of (A) inconsistent or varying adjudications with respect to
individual members of the Class that would establish incompatible standards of conduct
for the defendants opposing the Class, or (B) adjudications with respect to individual
members of the Class that would, as a practical matter, be dispositive of the interests of
the other members not parties to the adjudication or substantially impair or impede their
ability to protect their interests.

B.      23(b)(2).  This action is suitable as a class action under 23(b)(2)  because
the Defendants have acted or refused to act on grounds generally applicable to the Class
as a whole, thereby making appropriate final injunctive, declaratory or other appropriate
equitable relief with respect to the Class.

C.      23(b)(3).  This action is suitable to proceed as a class action under
23(b)(3) because questions of law and fact common to the members of the Class
predominate over individual questions, and this class action is superior to other available
methods for the fair and efficient adjudication of this controversy.  Given the nature of
the allegations, no class member has an interest in individually controlling the

prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be

encountered in the management of this matter as a class action.

## VII. CLAIMS FOR RELIEF

### COUNT I

**Engaging in Prohibited Transactions by Causing the Plans to
Invest in Wells Fargo Affiliated Investment Products and To Purchase
Products and Services Provided by Wells Fargo Subsidiaries and Affiliates
(Violation of § 406 of ERISA, 29 U.S.C. § 1106 by the Benefit Committee)**

62.    Plaintiff incorporates the allegations contained in the previous paragraphs of this

Complaint as if fully set forth herein.

63.    At all relevant times, the Benefit Committee and its members acted as fiduciaries

within the meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(21)(A), by exercising authority and

control with respect to the management of the 401(k) Plan and the 401(k) Plan's assets.

64.    The Benefit Committee and its members, by their actions and omissions in

authorizing or causing the 401(k) Plan to invest in the Wells Funds and purchase Wells Fargo-

affiliated products and services, including Wells Funds, and pay, directly or indirectly,

investment management and other fees in connection therewith, caused the 401(k) Plan to

engage in transactions that Committee Defendants knew or should have known constituted sales

or exchanges of property between the 401(k) Plan and parties in interest, the furnishing of

services by parties in interest to the 401(k) Plan, and transactions with fiduciaries in violation of

§§ 406(a)(1)(A), (C), and 406(b), 29 U.S.C. §§ 1106(a)(1)(A), (C), and 406(b).

65.    As a direct and proximate result of these prohibited transaction violations, the

401(k) Plan, directly or indirectly, paid millions of dollars in investment management and other

fees that were prohibited by ERISA and suffered millions of dollars in losses annually.

66.     Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Committee Defendants are liable to restore all losses suffered by the Plans as a result of the prohibited transactions and all profits earned by Wells Fargo on the fees paid by the 401(k) Plan to Wells Fargo and its subsidiaries and affiliates.

## COUNT II

**Breach of Duties of Loyalty and Prudence by Causing the 401(k) Plan to
Invest in Wells Funds Which Caused Losses to the 401(k) Plan
(Violation of § 404 of ERISA, 29 U.S.C. § 1104 by Committee Defendants)**

67.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

68.     At all relevant times, the Benefit Committee and its members acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(21)(A), by exercising authority and control with respect to the management of the 401(k) Plan and the 401(k) Plan's assets.

69.     The Benefit Committee and its members, by their actions and omissions in authorizing or causing the 401(k) Plan to invest in Wells Funds and purchase products and services from Wells Fargo subsidiaries and affiliates, and to pay investment management and other fees in connection therewith, to Wells Fargo subsidiaries and affiliates, put Wells Fargo's financial interests ahead of the 401(k) Plan's interests.  Thus, the Benefit Committee and its members breached their duties of prudence and loyalty to the 401(k) Plan under ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B).

70.     As a direct and proximate result of these breaches of duty, the 401(k) Plan, and indirectly Plaintiff and the 401(k) Plan's other participants and beneficiaries, lost millions of dollars to Wells Fargo fees and inferior returns.

71.     Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), the Benefit Committee and its members are liable to restore all losses suffered by the 401(k) Plan caused by their breaches of fiduciary duty.

## COUNT III

**Breach of Co-Fiduciary Duty by Knowingly Participating In The Benefit Committee's Breaches of Fiduciary Duty and Prohibited Transactions and Failing to Remedy Breaches of Fiduciary Duty and Prohibited Transactions**
**(Violation of § 405 of ERISA, 29 U.S.C. § 1105 by Wells Bank)**

72.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

73.     At all relevant times, Wells Bank was the trustee and a fiduciary of the 401(k) Plan.

74.     Wells Bank, by its actions and omissions in knowingly participating in the Benefit Committee's breaches of fiduciary duty and failing to take steps to remedy such breaches violated ERISA § 405(a)(1), (3), 29 U.S.C. § 1105(a)(1), (3).

75.     As a direct and proximate result of these breaches of duty, the 401(k) Plan, and indirectly Plaintiff and the 401(k) Plan's other participants and beneficiaries, lost millions of dollars to Wells Fargo fees and inferior returns.

76.     Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Wells Bank is liable to restore all losses suffered by the 401(k) Plan caused by its breaches of co-fiduciary duty.

## COUNT IV

**Wells Fargo Violated ERISA by Knowingly Participating in Breaches of Fiduciary Duty and Prohibited Transactions.**
**(§ 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) by Wells Fargo)**

77.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

78.     At all relevant times, Wells Fargo was a party in interest to the 401(k) Plan. Wells Fargo, through its Board of Directors, appointed and monitored the members of the Benefit Committee.

79.     Wells Fargo, by its actions in participating in and abetting fiduciary breaches and prohibited transactions, caused the 401(k) Plan to invest in Wells Funds and purchase products and services from Wells Fargo subsidiaries and affiliates, and to pay investment management and other fees in connection therewith, to Wells Fargo subsidiaries and affiliates. A party in interest is subject to liability under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

80.     As a direct and proximate result of Wells Fargo's violations of ERISA, the 401(k) Plan, and indirectly Plaintiff and the 401(k) Plan's other participants and beneficiaries, lost millions of dollars to Wells Fargo fees and inferior returns.

81.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) Wells Fargo is liable to disgorge all revenues received from the 401(k) Plan and Wells Fargo's earnings thereon.

## VIII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1.      Declare that the Benefit Committee and its members have violated ERISA's prohibited transactions provisions;

2.      Declare that the Benefit Committee and its members breached their fiduciary duties under ERISA;

3.      Declare that Wells Bank knowingly participated in the Benefit Committee's and its members' violations of ERISA and failed to take steps to remedy those violations;

4.      Declare that Wells Fargo knowingly participated in the Benefit Committee's and its members' violations of ERISA;

5.      Issue an order compelling defendants to disgorge all fees paid and incurred, directly or indirectly, to Wells Fargo subsidiaries and affiliates by the 401(k) Plan, including disgorgement of profits thereon;

6.      Issue an order compelling the Benefit Committee and its members and Wells Bank to restore all losses to the 401(k) Plan arising from their violations of ERISA;

7.      Order equitable restitution and other appropriate equitable monetary relief against Defendants;

8.      Award such other equitable or remedial relief as may be appropriate, including the permanent removal of Defendants from any positions of trust with respect to the 401(k) Plan, the appointment of independent fiduciaries to administer the 401(k) Plan, rescission of the 401(k) Plan's investments in Wells Funds and the 401(k) Plan's and contracts with affiliated service providers, and enjoining Defendants from causing the 401(k) Plan to invest in Wells Funds and contract with affiliated service providers;

9.      That this action be certified as a class action and that the Class be designated to receive the amounts restored or disgorged to the 401(k) Plan by Defendants and a constructive trust be established for distribution to the extent required by law;

10.     Enjoin Defendants collectively from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

11.     Award Plaintiff her attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and/or the Common Fund doctrine; and

Award such other and further relief as the Court deems equitable and just.


DATED this 1st Day of November 2007.        Respectfully submitted:

By: _____
J. Brian McTigue (D.C. Bar No. 475904)
Gregory Y. Porter (D.C. Bar No. 458603)
MCTIGUE & PORTER LLP
5301 Wisconsin Avenue, NW
Suite 350
Washington, DC  20015
Tel:  (202) 364-6900
Fax: (202) 364-9960
bmctigue@mctiguelaw.com
gporter@mctiguelaw.com

*Attorneys for Plaintiff Yvonne Gipson*

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

## I. (a) PLAINTIFFS

Yvonne Gipson, and all others similarly situated,

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   88888
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

Wells Fargo & Company, Wells Fargo Bank, N.A.,
Employee Benefit Review Committee, John Does 1-20

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   88888
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

J. Brian McTigue
McTigue & Porter LLP
5301 Wisconsin Ave., NW, Suite 350
Washington, DC 20015
(202) 364-6900

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

● 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
  Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

## ○ E. General Civil (Other)        OR        ○ F. Pro Se General Civil

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
  defendant
☐ 871 IRS-Third Party 26
  USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
  of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
  Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
  Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
  Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
  Exchange
☐ 875 Customer Challenge 12 USC
  3410
☐ 900 Appeal of fee determination
  under equal access to Justice
☐ 950 Constitutionality of State
  Statutes
☐ 890 Other Statutory Actions (if
  not administrative agency
  review or Privacy Act

| ◎ G. *Habeas Corpus/* *2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General <br> ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act <br> ☐ 890 Other Statutory Actions (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ◉ K. *Labor/ERISA* *(non-employment)* | ○ L. *Other Civil Rights* *(non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt. Reporting & Disclosure Act <br> ☐ 740 Labor Railway Act <br> ☐ 790 Other Labor Litigation <br> ☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) <br> ☐ 443 Housing/Accommodations <br> ☐ 444 Welfare <br> ☐ 440 Other Civil Rights <br> ☐ 445 American w/Disabilities-Employment <br> ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholder's Suits <br> ☐ 190 Other Contracts <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Civil enforcement action under ERISA §§ 404, 406, and 409, 29 U.S.C. §§ 1104, 1106 and 1109, for losses to the 401(k) Plan.

**VII. REQUESTED IN COMPLAINT**   ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND: YES ☐ NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 11/01/2007   SIGNATURE OF ATTORNEY OF RECORD *[signature]*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.