# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Yvonne Gipson**
**1404 Chesapeake Avenue**
**Annapolis, MD 21403,**
**and all others similarly situated,**                    **CASE NUMBER 1:07-CV-01970-JDB**

                                        **Plaintiffs,**

                                                              **MOTION TO DISMISS FOR**
**v.**                                                        **IMPROPER VENUE OR IN THE**
                                                              **ALTERNATIVE TO TRANSFER**
**Wells Fargo & Company, Wells Fargo**
**Bank, N.A., Employee Benefit Review**
**Committee, and John Does 1 - 20, et al.,**                 **ORAL ARGUMENT REQUESTED**

                                        **Defendants.**

Defendants Wells Fargo & Company ("Wells Fargo"), Wells Fargo Bank, N.A. ("Wells Fargo Bank"), and the Employee Benefit Review Committee (the "Review Committee") (collectively the "Wells Fargo Defendants") hereby move to dismiss the Complaint for improper venue under Fed. R. Civ. P. 12(b)(3) or, in the alternative, to transfer this case to the District of Minnesota pursuant to 28 U.S.C. § 1404(a).

This motion will be based upon Wells Fargo Defendants' Memorandum of Points and Authorities, the supporting affidavits, all of the files, records, and proceedings therein, such evidence and argument as may be presented to the Court prior to the decision on this Motion, and the arguments of counsel.

The Wells Fargo Defendants believe that oral argument would materially assist the Court and therefore request a hearing on this motion.

Dated:  January 31, 2008

DORSEY & WHITNEY LLP


By:___s/Creighton R. Magid_____
    Creighton R. Magid (DC#1071807)
1050 Connecticut Avenue NW
Suite 1250
Washington, D.C. 20036
(202) 442-3000
magid.chip@dorsey.com

AND

    Stephen P. Lucke *(admitted pro hac vice)*
    Andrew J. Holly *(admitted pro hac vice)*
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
(612) 340-2600 (telephone)
(612) 340-2868 (facsimile)
lucke.stephen@dorsey.com
holly.andrew@dorsey.com

```
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
```

---

**Yvonne Gipson**
**1404 Chesapeake Avenue**
**Annapolis, MD 21403,**
**and all others similarly situated,**

        **Plaintiffs,**

**v.**

**Wells Fargo & Company, Wells Fargo**
**Bank, N.A., Employee Benefit Review**
**Committee, and John Does 1 - 20, et al.,**

        **Defendants.**

**CASE NUMBER 1:07-CV-01970-JDB**

**MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT OF**
**MOTION TO DISMISS FOR**
**IMPROPER VENUE OR IN THE**
**ALTERNATIVE TO TRANSFER**

**ORAL ARGUMENT REQUESTED**

---

Defendants Wells Fargo & Company ("Wells Fargo"), Wells Fargo Bank, N.A. ("Wells Fargo Bank"), and the Employee Benefit Review Committee (the "Review Committee") (collectively the "Wells Fargo Defendants") submit the following Memorandum of Points and Authorities in support of their motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3) or, in the alternative, to transfer this case to the District of Minnesota pursuant to 28 U.S.C. § 1404(a).

The Wells Fargo Defendants believe that oral argument would materially assist the Court and therefore request a hearing on this motion.

I.  **INTRODUCTION**

Yvonne Gipson ("Gipson") filed this ERISA action against certain alleged fiduciaries of the Wells Fargo & Company 401(k) Plan (the "Plan") in the United States District Court for the District of Columbia.

The Plan, however, includes a forum selection clause that requires that all Plan-related claims be filed in the District of Minnesota, where the Plan is administered. Courts routinely

enforce similar forum selection clauses in ERISA plans, and should do so here as well.  Under well-established Supreme Court precedent, this action must be dismissed (or transferred) for improper venue.

Even without the forum selection clause, Gipson had no basis to file this case in the District of Columbia.  She does not reside in this district, her previous employment at Wells Fargo was not in this district, and none of the Wells Fargo Defendants are citizens in this district.  Further, none of the Plan's fiduciaries, administrators, or investment advisors live or work in this district.  In fact, apart from the fact that Gipson's counsel offices in this district, this case does not have a *single* connection to the District of Columbia.  Transfer of this case to the District of Minnesota – where the Plan is administered and where the majority of the witnesses and documents are – is therefore also appropriate under 28 U.S.C. § 1404(a).

## II.    BACKGROUND

### A.    Wells Fargo Sponsors A 401(k) Plan, Which Is Administered In The District Of Minnesota.

Wells Fargo sponsors the Plan.  See Complaint, ¶ 23.  The Plan is a defined contribution pension plan subject to ERISA, 29 U.S.C. § 1001 *et. seq*.  See Complaint, ¶ 21.  As its name implies, it is also qualified under IRC § 401(k).  Id. ¶ 21.  Like other 401(k) plans, the Plan allows participants to invest a portion of their salaries on a tax-deferred basis in one of several investment options of their choosing.[1]  Funds include offerings from Dodge & Cox and the

---

[1]    See Complaint, ¶ 35-36.  See also Affidavit of Paula Roe ("Roe Affidavit") at Exhibit A, § 8.1 (hereinafter referred to as the "Plan").  Because the plan document is referenced in the Complaint, it is within the pleadings and can be reviewed on a Rule 12 motion.  See Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).  It is also appropriate for the Court to examine information outside the pleadings on a motion for improper venue or to transfer.  E.g., Rerner v. Burlington Area School Dist, 205 F.3d 990, 996 (7th Cir. 2000).

American Funds, as well as mutual funds and collective funds[2] managed by Wells Fargo Fund

Management, LLC a subsidiary of Wells Fargo, and subadvised by Wells Capital Management,

State Street Bank & Trust, Barclays Global Investors and a variety of other institutions.  See

Complaint, ¶ 2.  Roe Affidavit, ¶ 16-19.  See also Roe Affidavit, Ex. B. (hereinafter referred to

as the "SPD") pp. 12-20.  Although the Complaint fails to mention it, Department of Labor

regulations and guidelines specifically allow company-sponsored 401(k) plans to include funds

managed by affiliates.  See Prohibited Transaction Exemption 77-3, 42 Fed. Reg. 18734 (April 8,

1977).  Participants may transfer their Plan investments to different investment options within

the plan at any time.  See SPD, p. 13-15.

As identified in the SPD, the Plan is administered in Minnesota.  Specifically,

participants are notified that they can contact the Plan Administrator in Minneapolis, Minnesota,

which is also the location where it can be served with process.  See SPD pp. 36-37.  It is also

where claims for benefits must be filed and where copies of documents can be obtained.  Id.

pp. 36-37.  In addition, the SPD indicates that the Plan Trustee can be found in Minnesota.  Id.

p. 37.

The Plan also includes a forum selection clause that requires that all claims or causes of

action related to the Plan be filed in the United States District Court for the District of

Minnesota.  It states:

> **All controversies, disputes, and claims arising hereunder shall be submitted
> to the United States District Court for the District of Minnesota.**

See Plan Document at § 1.4 (emphasis added).  This venue provision has been a provision of the

Plan (and prior versions of the Plan) since at least 1976.  See Roe Affidavit, ¶ 15.

---

[2]    Regulated by the Comptroller of the Currency rather than the SEC, collective funds are
nevertheless similar to mutual funds insofar as they pool investments in a diversified portfolio.

### B.    Gipson's ERISA Claims.

Despite this forum selection clause, in November 2007, Yvonne Gipson filed a putative

class action against the Wells Fargo Defendants in the District of Columbia.  See Complaint p. 1.

The Complaint alleges that for the period from 2001 to the present, the Wells Fargo Defendants

improperly selected (and aided and abetted the selection of) mutual funds managed by affiliates

of Wells Fargo (the "Wells Fargo Funds") as investment options for the Plan in order to

"generate[] substantial revenues for Wells Fargo."  Id., ¶ 3.  The Complaint further alleges that

these funds charged "significantly higher fees than comparable, unaffiliated funds, while offering

mediocre returns."  Id., ¶ 8.[3]  Notwithstanding the Supreme Court's recent ruling in Bell Atlantic

v. Twombly, 127 S. Ct. 1955 (2007) that, rather than mere "labels and conclusions, and a

formulaic recitation of the elements of a cause of action," a complaint must allege "enough

factual matter" to "plausibly suggest[]" that each element of the claim has been met, id. at 1966-

67, the Complaint does not allege a single, concrete fact that supports Gipson's conclusory

allegations of wrongdoing.  See Complaint ¶¶ 8, 27, 38, 40.

### C.    The Plan Is Administered In Minnesota, With No Connection To The District Of Columbia.

Although Gipson filed her Complaint in the United States District Court for the District

of Columbia, the facts and witnesses in this case have no relationship to this district.  Rather, the

---

[3]    Specifically, the Complaint alleges that the transactions between the Wells Fargo entities
and the Plan were a breach of fiduciary duty under ERISA § 404(a) (29 U.S.C. § 1104(a)),
because the Plan fiduciaries failed to select mutual funds in the best interests of the participants.
Likewise, it also alleges that these transactions violated ERISA's prohibited transaction rules, see
ERISA § 406(a) (29 U.S.C. § 1106(a)), because they involved a transfer of property between the
Plan and a "party in interest." (Gipson does not attempt to allege, however, why the inclusion of
the Wells Fargo Mutual Funds was outside Prohibited Transaction Exemption 77-3 allowing
such investments).  Finally, the Complaint alleges that Wells Fargo and Wells Fargo Bank
participated in and aided and abetted the wrongdoing of other fiduciaries.  See Complaint ¶ 64.

Plan's Minnesota forum selection clause, together with the underlying allegations and key witnesses, leave Minnesota as the only appropriate venue for this action.

As noted, Gipson's Complaint alleges that the Wells Fargo Funds were selected as Plan investment options not to benefit the participants, but to benefit the Wells Fargo Defendants. See supra n.3.  Thus, most of the witnesses in this matter will be those with responsibilities for administering the Plan, including researching, selecting,  monitoring, and accounting for the Plan's investment options (and associated fees), as well as carrying out trustee services that are alleged to be implicated in the alleged fiduciary breaches.  See Complaint ¶ 1-4; 7-11.  The great majority of that activity takes place in Minnesota.

The Plan's sponsor, Wells Fargo, was formerly known as Norwest Corporation and was headquartered in Minnesota until it acquired former Wells Fargo & Company and moved its headquarters to California.  Roe Affidavit, ¶ 3.  Following the merger, substantial business operations have remained in Minnesota, including the delivery of institutional trust services and the administration of the Plan.  See Roe Affidavit, ¶ 3, 9.  See also SPD at p. 36-38.  The Plan provides that the Wells Fargo's Director of Human Resources and the Director of Compensation and Benefits will serve as the Plan Administrator and as the "named fiduciary" under the Plan.[4] See Plan Document § 12.1.  Throughout the alleged class period, the Director of Compensation and Benefits (and one of the Plan Administrators under the terms of the Plan), Paula Roe, lived and worked in Minnesota.  Roe Affidavit, ¶ 1[5].  Most of the staff whose duties involve the

---

[4]    ERISA requires that every employee benefit plan "name" a fiduciary that will be responsible for the administration of the Plan.  See ERISA § 402.

[5]    Wells Fargo's Executive Vice President and Director of Human Resources Julie White, to whom Roe reports, is a resident of Iowa and works in Iowa and San Francisco.  Roe Affidavit, ¶ 4.

administration of the Plan work in Minnesota, and most of the actual administration of the Plan (*e.g.* providing information to Plan participants and beneficiaries, processing distribution requests, and interfacing with Wells Fargo's Payroll Department and the Plan's trustee) occurs in Minnesota. Id. ¶ 5-6. See also SPD p. 36, 38. Among others, Wells Fargo's Manager of Retirement Plans (currently Robert Brausen and formerly Debbie Harvieux[6]), as well as the Manager of the Plan (Melanie Miller), reside and work in Minnesota. Id. ¶ 5.

In addition, the investment manager with respect to the Plan (Tom Hooley) and his staff live and work in Minnesota. Id. ¶ 6. They assist in the research, selection, and ongoing review of the Plan's investment options, including the fees and expenses associated with those options. Id. Hooley reports and makes recommendations to the Employee Benefit Review Committee (the "Review Committee") (whose past and present members reside throughout the country) regarding Plan investment decisions. Id. ¶ 6, 10. Prior to Mr. Hooley, David Lunt, who also lives and works in Minnesota, served as investment manager. Id., ¶ 7. All of the records compiled by Hooley, Lunt, and their staffs are located in Minnesota, as are all of the records of the Review Committee whom they advise. Id. ¶ 8.

Further, Wells Fargo Bank, which the Complaint alleges, "knowingly participated" in the breaches of fiduciary duty, serves as the trustee of the Plan under ERISA § 403. See Complaint ¶ 18. See also SPD p. 37. A Wells Fargo Bank employee (Craig Peiffer) and other members of the Institutional Trust Services division of the Bank perform all of the trustee services for the Plan (such as daily calculation of plan assets and participants' account balances, processing distributions and participant loans, and the administration of participant's trading activities). Roe Affidavit ¶ 9. All of the employees of the Institutional Trust Services division who perform

---

[6]    Debbie Harvieux no longer works for Wells Fargo. See Roe Affidavit, ¶ 5.

these trustee services work in Minnesota.  Id.  The trustee also provides a call center for Wells Fargo employees to provide assistance with Plan issues, which is located in Minnesota.  Id.

In contrast, there is no connection between this lawsuit and the District of Columbia. Gipson does not live in this district.  See Complaint ¶ 16.  Even when she worked for Wells Fargo Bank, she worked in Maryland, not the District of Columbia.  Roe Affidavit, ¶ 13. Further, of the 184,459 participants of the Plan, only 47 live in the District of Columbia.  Id. ¶ 11.  In contrast, 21,360 participants live in Minnesota, the state having the second largest concentration of Plan participants.  Id.

Notably, none of the Wells Fargo Defendants have any significant presence in the District of Columbia.  Wells Fargo is a Delaware corporation with its principal place of business in California.  Id. ¶ 3.  It has only three employees in the District of Columbia, all of whom work on government relations issues.  Id. ¶12.  Wells Fargo Bank is a national bank chartered in South Dakota, with its principal place of business in California.  Id. ¶ 9.  Of its 133,590 employees, fewer than 70 work in the District of Columbia.  Id. ¶ 12.  None of the Wells Fargo or Wells Fargo Bank employees who work in the District of Columbia has any relationship to the administration of the Plan.  Id.  Finally, none of the Review Committee's business occurs in the District of Columbia, and none of its members live or work in this district.  Id. ¶ 10.

Similarly, none of the funds that Gipson alleges yield mediocre returns and charge excessive fees have any connection to the District of Columbia.  Specifically, Dodge & Cox, Capital Research and Management Company, State Street Bank & Trust, and Barcalys (all of which either manage or provide advisory services to Plan funds) are all based in places other than the District of Columbia.  Roe Affidavit, ¶ 18-20.  Similarly, the managers and subadvisors affiliated with Wells Fargo (e.g., Wells Fargo Funds Management LLC, Wells Capital

Management, Peregrine Capital Management, Inc. and Galliard Capital Management) are all headquartered in California or Minnesota.  See Roe Affidavit, ¶ 16-17.  Similarly, none of the Plan's administrative service providers are located in the District of Columbia; the Plan's record-keeper, SunGard, for example, is based in Arkansas.  Id., ¶ 14.  In sum, the only connection between this case and the District of Columbia is that Gipson's counsel has an office in this district.  Neither Gipson nor any of the Wells Fargo Defendants or their employees with responsibility for the selection or maintenance of the Plan's investment subfunds has any connection to the District of Columbia.

## III.    ANALYSIS

### A.    The Forum Selection Clause Mandates Dismissal Of This Action Or A Transfer To The District Of Minnesota.

Because the Plan requires that all disputes regarding the Plan be filed in the District of Minnesota, this Court should dismiss this action under Fed. R. Civ. P. 12(b)(3) for lack of proper venue.  See Commerce Consultants Int'l, Inc. v. Vetrene Riunite, S.P.A., 867 F.2d 697, 700 (D.C. Cir. 1989) (affirming Rule 12(b)(3) dismissal based upon forum selection clause); Nat'l Dev. Corp. v. Fenetres MQ, Inc., 1998 WL 34313581, at * 3 (D.D.C. 1998) (dismissing  for improper venue based on forum selection clause).  Alternatively, this Court has the authority to transfer this matter to the District of Minnesota pursuant to 28 U.S.C. § 1406, which authorizes a court to transfer a case to a district with proper venue, rather than dismiss it.

The Supreme Court has repeatedly held that forum selection clauses are appropriate and that federal courts should liberally enforce them.  See Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (federal courts must enforce forum selection clauses unless "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or

overreaching."); <u>Carnival Cruise Lines, Inc., Shute</u>, 499 U.S. 585, 593-94 (1991) (enforcing forum selection clause in non-negotiated, boilerplate, contract).

Consistent with this directive, Courts routinely enforce forum selection clauses in ERISA plans. <u>E.g.</u>, <u>Bernikow v. Xerox Corp.</u>, 2006 WL 2536590 * 2 (C.D. Cal. 2006) (enforcing ERISA forum selection clause contained in plan document); <u>Klotz v. Xerox Corp.</u>, 519 F. Supp. 2d 430 (S.D.N.Y. Oct. 22, 2007) (same). These courts recognize that in the "absence of a clear directive from Congress, there is no reason to disturb the general presumption in favor of enforcing forum selection clauses." <u>Bernikow</u>, 2006 WL 2536590 at * 3. Enforcing such clauses is also consistent with the well-established rule enforcing arbitration provisions – a "specialized type of forum selection clause"[7] – in ERISA plans.[8]

For example, in <u>Bernikow</u>, the plaintiff raised claims against a long-term disability plan. The defendant moved to dismiss the case for improper venue (or, in the alternative, to transfer the matter). In granting the defendants' motion, the court noted that forum selection clauses have widely been enforced, and that there was no basis under ERISA to ignore the general presumption in their favor. Because there was no evidence that the clause was procured by fraud or overreaching, or that ERISA prohibited such clauses, the motion to dismiss was granted and the case was transferred under 28 U.S.C. § 1406. <u>Bernikow</u>, 2006 WL 2536590 at * 2.

Under this authority, Gipson was required to bring her claim in the District of Minnesota. Section 1.5 of the Plan broadly applies to all "controversies, disputes and claims arising under

---

[7]    <u>Roby v. Corporation of Lloyd's</u>, 996 F.2d 1353, 1363, n.2 (2d Cir. 1993).

[8]    <u>Bird v. Shearson Lehman/Am./ Express, Inc</u>. 926 F.2d 116, 117-22 (2d Cir. 1991) (enforcing arbitration clause in ERISA plan) ; <u>Chappel v. Labatory Corp. of Am.</u>, 232 F.3d 719, 725 (9th Cir. 2000) (same); <u>Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.</u>, 847 F.2d 475, 478 (8th Cir. 1988) (same).

the Plan." The allegations in the Complaint clearly allege a "controvers[y]" under the Plan, as it alleges that the Wells Fargo Defendants' behavior violates the standards set forth in the Plan. For example, the Plan bars any fiduciary from engaging in "any prohibited transaction within the meaning of ERISA." See Plan Document § 12.8. As noted earlier, Gipson's Complaint alleges that the Wells Fargo Defendants violated this standard by causing the Plan to engage in various prohibited transactions. See Complaint ¶¶ 62-66. Likewise, the Plan requires that all fiduciaries exercise their duties with the "care, skill, prudence, and diligence . . . that a prudent person acting in like capacity and familiar with such matters would use." See Plan Document, § 12.7. The Complaint alleges that the Wells Fargo Defendants violated this standard, insofar as the selection of the Wells Fargo Funds was not taken with the "care, skill, prudence, and diligence . . . that a prudent man acting in a like capacity and familiar with such matters would use . . ." Complaint ¶ 43. Thus, because Gipson's Complaint alleges that the Wells Fargo Defendants took actions that violated the Plan's standard of conduct, her claim clearly arises "under" the Plan.

Similarly, Gipson's claim that the Wells Fargo Defendants violated various provisions of ERISA also arises under the Plan. Courts have uniformly held that a contractual provision referring all "controver[sies] or claim[s]" arising under an agreement to a particular venue includes claims based upon a violation of an underlying or related statute. See Scherk v. Alberto-Culver Co., 417 U.S. 506, 508-09 (1974) (holding that claim under Securities Exchange Act was covered by arbitration clause in international contract governing "any controversy or claim [arising] out of this agreement or the breach thereof"); Phillips v. Audio Active, Ltd., 494 F.3d 378 (2nd Cir. 2007) (finding that claim arising under Copyright Act could also "arise out of" contract for purposes of interpreting forum selection clause); Abbott Labs, 476 F.3d 421, 424

(7th Cir. 2007) (rejecting plaintiff's argument that breach of fiduciary duty claim arising under Delaware tort law did not arise from the contract); <u>Bense v. Interstate Battery System of America</u>, 683 F.2d 718 (1st Cir. 1982) (finding complaint brought under federal antitrust law arose from distribution agreement between parties).

In light of these authorities, it is appropriate to require that Gipson bring her claims in Minnesota in compliance with the Plan's forum selection clause. With the clause a part of the Plan for decades, there can be no claim that its inclusion in the Plan was in bad faith or otherwise improper. Moreover, as provided by ERISA § 104(b), Gipson had been entitled as a participant to receive (and was thus on notice of) the Plan language containing the venue clause, <u>see</u> Complaint ¶ 16, and based upon the allegations in her Complaint, it appears that she did, in fact, have a copy prior to filing. <u>See</u> <u>e.g.</u>, <u>id.</u>, ¶¶ 1-4, 22-27, 30-34. In any event, even if Gipson had not requested Plan documents or had otherwise overlooked the forum selection clause, it is still enforceable. <u>See</u> <u>Schoemann</u> , 447 F. Supp. 2d at 1007 (even though the "typical beneficiary does not even know that the forum-selection clause exists," such clauses should still be enforced). <u>Cf.</u> <u>Klotz</u>, 2007 Wl 3100220 at * 1 (noting that plaintiff did not "seriously allege" that the forum selection clause had not been communicated to her where it was included in the Plan document.).[9]

---

[9]    This law is consistent with cases holding that forum selection clauses are enforceable even when included in boilerplate, non-negotiated contracts between parties of unequal bargaining power. <u>See</u> <u>e.g.</u>, <u>Carnival Cruise Lines, Inc., Shute</u>, 499 U.S. 585, 593-94 (1991) (enforcing forum selection clause even though it was not a bargained-for term of the contract); <u>Sivla v. Encyclopedia Britannica, Inc.</u>, 239 F.3d 385, 389 (1st Cir. 2001) ("Finally, Britannica's alleged bargaining power is not relevant [to the enforcement of a forum selection clause]. Britannica used its bargaining power to do nothing more than offer an appealing employment opportunity to appellant, and no evidence suggests that he was coerced into entering the agreement.").

Nor can Gipson claim that litigating in Minnesota would cause hardship on her or her counsel.  Gipson's lawyers have agreed to fund the litigation, see Complaint ¶ 59, and consistent with their advertised status as a large class action firm that "litigate[s] cases throughout the United States,"[10] they can readily litigate this matter in Minnesota.  See Complaint ¶ 59.  In fact, Plaintiff's counsel is currently litigating various ERISA claims throughout the United States,[11] including a case with similar allegations against 401(k) plan fiduciaries in Iowa.[12]  Thus, given that Gipson cannot show that she will experience "manifest[] and grave[]" inconvenience as a result of the enforcement of this clause, existing Supreme Court authority requires its enforcement.  See Bremen, 407 U.S. at 10; Commerce Consultants Intern., Inc. v. Vetrerie Riunite, S.p.A., 867 F.2d 697 (D.C. Cir. 1989).[13]

Therefore, because the Plan's forum selection clause is clear and unambiguous and there is no reason to disregard it, the Complaint should be dismissed for improper venue or, alternatively, transferred to the District of Minnesota pursuant to 28 U.S.C. § 1406.

_____

[10]    See http://www.mctiguelaw.com/.

[11]    See http://www.mctiguelaw.com/news/.

[12]    See McCullough v Aegon U.S.A., Inc., -- F. Supp. 2d --, 2007 WL 3232202 (N.D. Iowa, Oct. 30, 2007).  See also Leber v. Citigroup,  1:07-CV-09329 (S.D.N.Y).

[13]    Courts, in fact, have been willing to transfer ERISA claims requesting small benefit amounts filed by disabled participants to far away districts, ruling that the participants' attorney could litigate the matter in the distant forum without any significant hardship to the plaintiff. E.g., Bernikow, 2006 WL 2536590 * 2; Klotz v. Xerox Corp., 519 F. Supp. 2d 430 (S.D.N.Y. Oct. 22, 2007); Schoemann ex rel. Schoemann, 447 F. Supp. 2d at 1007.  Here, Gipson is seeking to litigate on behalf of a class of over 180,000 participants, over 23,000 of whom live in Minnesota.

**B.    Alternatively, This Matter Should Be Transferred To The District Of Minnesota Pursuant To Section 28 U.S.C. § 1404(a).**

Even if venue were not improper under Section 1406, this case should be transferred to Minnesota pursuant to 28 U.S.C. § 1404(a).  That statute states that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  See Van Dusen v. Barrack, 376 U.S. 612, 626 (1964).

Under existing § 1404 case law, transfer of venue is appropriate if:  (1) venue is proper in the court to which transfer is sought; (2) it is for the convenience of the parties and witnesses; and (3) it is in the interest of justice.  E.g., Berenson v. National Financial Services, Inc., 319 F. Supp. 2d 1 (D.D.C. 2004).  Minnesota is the appropriate forum for this action under each of these factors.  Venue would unquestionably be appropriate in the District of Minnesota, where the Plan is administered and where all of the Defendants have a presence.  See Roe Affidavit, ¶¶ 1, 3-10, 19.  Moreover, one of the Plan's Administrators, the investment manager, the trustee, their staffs, and various Wells Fargo employees and executives who administer its benefit plans live and work in that district as well.  Id. ¶¶ 1, 5, 6, 9.  There is, in contrast, no connection between this case and the District of Columbia:  not a single Wells Fargo employee with responsibility for the Plan or its investment decisions lives or works here.  Indeed, not even Gipson has a meaningful connection to this jurisdiction.

In analogous cases courts have readily transferred ERISA claims under § 1404(a).  For example, in Nat'l Traffic Controllers Ass'n v. Dental Plans, Inc., 407 F. Supp. 2d 1, 3 (D.D.C. 2005), the court granted defendants' motion to transfer an ERISA claim.  It noted that there was little basis for giving plaintiffs' choice of forum any deference as only one of the many plaintiffs lived there.  Id.  Since the Plan was administered in another district, – the Nat'l Traffic

Controllers Court readily transferred the ERISA claim to the district where the Plan was administered. Id. See also Brotherhood of Painters and Allied Trades Union v. Rose Brothers Home Decorating Center, Inc., 1992 WL 24036, at *2 (D.D.C. Jan. 14, 1992) (granting motion to transfer in ERISA case where witnesses and records were all located in transferee district); Campbell v. Consolidated Building Specialties, 683 F. Supp. 271, 273 (D.D.C. 1987) (granting motion to transfer in ERISA case where the daily administration of the pension fund did not take place in the district); McCullough v. AEGON U.S.A., -- F. Supp. 2d --, 2007 WL 3232202 (N.D. Iowa, Oct. 30, 2007) (transferring 401(k) case brought by firm that represents Gipson from California to Iowa).

Similarly, in George v. Kraft Global Foods, Inc., 2007 WL 853998 (S.D. Ill., March 16, 2007), participants brought a claim on behalf of a putative class alleging that their employer's 401(k) plan had imprudently chosen investing in investment options with excessive fees. The Court found the initial forum to be inconvenient under 1404(a) given the complete lack of any connection between the case and the forum and transferred the case to the district where the majority of witnesses lived. Kraft, 2007 WL 853998 at *8. See also Ruppert v. Principal Life Ins. Co., 2007 WL 2025233, at *6 (S.D. Ill. July 9, 2007) (case transferred where transactions underlying lawsuit had no nexus with district, and all witnesses with material knowledge of transactions were located in transferee forum). Here, consistent with McCullough, Kraft, Nat'l Traffic Controllers Ass'n, and Ruppert, each of the criteria for a 1404(a) transfer favors Minnesota over the District of Columbia as the appropriate forum for this action.

      1.    This Action Could Have Been Brought In The District Of Minnesota.

Initially, venue would be proper in the District of Minnesota. Under ERISA's venue provision, an action can be brought in the district where "the plan is administered, the breach

14

took place, or where a defendant resides or may be found." See ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)). Because the Plan is administered in Minnesota, see Roe Affidavit, ¶ 3-4; SPD p. 36, 38, venue would be appropriate in the District of Minnesota under ERISA § 502(e)(2). Further, Defendants Wells Fargo and Wells Fargo Bank (as well as the Review Committee) can be "found" in the District of Minnesota; each Defendant regularly conducts business in that district and has "minimum contacts" with that forum. See Roe Affidavit ¶¶ 3, 5-9, 12; SPD p. 36-38. See also e.g., I.A.M. Nat'l Pension Fund benefit Plan v. Wakefield Indus., Inc., 699 F.2d 1254, 1257 (D.C. Cir. 1983) (noting that a defendant may be "found" under ERISA's venue provisions anywhere it has "minimum contacts" such that personal jurisdiction is appropriate); Varsic v. United States District Court, 607 F. 2d 245, 248 (9th Cir. 1979) (same).

There is, therefore, no serious dispute that venue would be proper in the District of Minnesota under ERISA § 502(e)(2).

> 2.    The Convenience Of The Parties And Witnesses Support Transfer
>        To The District Of Minnesota

Likewise, the convenience of the parties and witnesses support transferring this matter to the District of Minnesota.

Courts examine the following factors to determine the most convenient district for the parties and the witnesses: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. See Berenson v. National Financial Services, Inc., 319 F. Supp. 2d 1 (D.D.C. 2004); McClamrock v. Eli Lilly & Co., 267 F. Supp. 2d 33 (D.D.C. 2003); Trout Unlimited v. United States Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996). All of these factors support transferring this case to the District of Minnesota.

a.    Gipson's Choice Of Forum Is Entitled To No Deference

Although a plaintiff's choice of forum is sometimes accorded some deference, no such

deference applies here because Gipson has no connection to this forum.  She resides in

Maryland, not the District of Columbia.  See Complaint ¶ 16 (noting that Gipson "resides in

Annapolis, MD").  When she was employed by Wells Fargo, it was in Maryland, not the District

of Columbia.  See Roe Affidavit, ¶13.  Although she alleges that she has been employed in the

District of Columbia after she left Wells Fargo's employment, this is not a sufficient contact to

create a recognizable interest in the forum.  See Foster v. Nationwide Mut. Ins. Co., 2007 WL

4410408, at *3 (N.D. Cal. Dec. 14, 2007) (where plaintiff did not live in chosen forum, his

choice was given little weight, even though he worked part-time in the district).  Since she has no

connection to the District of Columbia, this Court should not provide any deference to Gipson's

choice of forum.  E.g., Miracle Blade, LLC v. Ebrands Commerce Group, 207 F. Supp. 2d 1136,

1155 (D. Nev. 2002) ("A Plaintiff's choice of forum is normally only given substantial deference

if the plaintiff is a resident of the district in which the action is brought.  Otherwise, this bears

little significance on determining whether to grant a discretionary transfer."); Rupert, 2007 WL

2025233 at * 5.[14]

Gipson's choice of forum should also be given "diminished consideration" because her

chosen "forum has no meaningful ties to the controversy and no particular interest in the parties

_____

[14]    See also Lou v. Belzberg, 834 F. 2d 730, 734 (9th Cir. 1987) ([i]f the operative facts have
not occurred within the forum and the forum has no interested parties or subject matter,
[plaintiff's] choice of forum is entitled to only minimal consideration."); Lajaunie v. L & M Bo-
Truc Rental, Inc., 261 F. Supp. 2d 751 (D. Tex. 2003) ("Court[s] look with great scrutiny at the
choices of plaintiffs who file where they do not reside.").  See also e.g., Wright, Miller &
Cooper, Federal Practice & Procedure, v. 15, § 3484, p. 130 (2007) ("[I]f the plaintiff is not a
resident of the forum, then the plaintiff's forum choice is entitled to less deference from the
district judge.") (citing cases).

or the subject matter." Sheldon v. National R.R. Passenger Corp., 355 F. Supp. 2d 174 (D.D.C.

2005). See also In re Consolidated Parlodel Litigation, 22 F. Supp. 2d 320 (D.N.J. 1998)

(refusing to grant deference to plaintiff's choice of forum because "although a plaintiff's choice

of forum is ordinarily afforded significant weight, that factor diminishes where the plaintiff

chooses a foreign forum rather than his or her home forum. The plaintiff's interest decreases even

further where the central facts of a lawsuit occur outside the chosen forum.") (quotations and

citations omitted).[15]  As discussed elsewhere, there is no connection between this case and the

District of Columbia:  none of the decisions regarding the selection or retention of investment

options occurred here, none of the investments at issue are managed or sub-advised here, and

none of the parties or relevant witnesses lives or works here.[16]  See infra p. 21.  While Gipson's

counsel is located here, the location of her counsel is *not* a significant consideration under

Section 1404(a).  E.g., Sornberger v. First Midwest Bancorp., Inc., 2002 WL 1182121 (N.D. Ill.

June 4, 2002).

Finally, Gipson's choice of forum should be accorded little if any deference because she

has brought this action as a putative class action on behalf of over 180,000 individuals.  As the

Berenson court held, "in a class action suit in which the plaintiffs propose to represent a class of

potential plaintiffs who reside throughout the country, the plaintiffs' choice of forum deserves

less weight than it is typically given" simply because the true "plaintiff" is spread throughout the

---

[15]    See also e.g., Lou, 834 F. 2d at 734; McGovern v. Burrus, 2005 WL 670273 (D.D.C. 2005); Airport Working Group of Orange Co, Inc. v. U.S. Department of Defense, 226 F. Supp. 2d 227 (D.D.C. 2002); Wright, Miller, & Cooper, *Federal Practice & Procedure,* v. 15, § 3848 p. 134 n. 14 (2007) (citing cases).

[16]    In fact, for the last two years Gipson has not even been a participant in the Plan, substantially diminishing any claim that the wrongdoing she alleges occurred in this district. Roe Affidavit, ¶ 13.

country.  E.g., Berenson, 319 F. Supp. 2d at 3; Rupert. 2007 WL 2025233 at * 5.[17]  This is

particularly true where, as here, virtually all of the putative class members live in locations

outside of plaintiff's chosen forum. See Supco v. Automotive Parts, Inc. v. Triangle Auto, Spring

Co., 538 F. Supp. 1187, 1191 (E.D. Pa. 1982) (stating that when "the plaintiff seeks to represent

a class of many potential plaintiffs scattered across the country, plaintiff's choice of forum

deserves less weight.").  Indeed, the differential between the number of putative class members

in Minnesota and the District of Columbia shows that the District of Minnesota is the natural

venue for this action:  of the current 184,459 Plan participants, only 47 live in the District of

Columbia, while 21,360 live in Minnesota.  See Roe Affidavit, ¶ 12.  See also Berenson, 319 F.

Supp. 2d at 3-4 (rejecting plaintiffs' choice of forum in part because a small percentage of class

members lived in the District of Columbia).  Even the interests of the class that Gipson hopes to

represent favor transferring this case to Minnesota.[18]

_____

[17]    See also Lou v. Belzberg, 834 F. 2d 730, 734 (9th Cir. 1987); Williams v. Sears Roebuck
& Co. 1998 WL 61307 at * 1 (N.D. Cal. Jan. 29, 1998) (stating that "[t]here is little deference
given to choice of forums by plaintiff[s] representing a nationwide class.") (citing Blake Const.
Co. Inc. v. Int'l Harvester Co., 521 F. Supp. 1268, 1271-72 (N.D. Ill.1981); Steiner v. Hercules,
Inc., 1990 WL 97811 at *2 (E.D.Pa. July 9, 1990) (stating that "courts typically give plaintiffs'
choice of forum less weight in class action cases.") (citation omitted).

[18]    Thus, this case is distinguishable from Flynn v. Veazey Construction Group., 310 F.
Supp. 186 (D.D.C. 12004).  In Flynn, the district court refused to transfer an ERISA case,
concluding that the relevant transfer factors were split between the two forums, and therefore
deciding that the ERISA plaintiff's choice of forum should be respected.  See Flynn, 310 F.
Supp. at 192-93.  In contrast to Flynn and similar cases, however, there is a forum selection
clause in this case, which is to be given substantial deference in ERISA actions.  See supra p. _.
In addition, unlike the facts presented in Flynn, there is no connection between this jurisdiction
and the claim or the relevant witnesses; not even Gipson lives here.  Indeed, contrary to Flynn,
courts dealing with motions to transfer ERISA cases "in this district . . . have come down on
either side depending on the particular facts presented to them."  Int'l Brotherhood of Painters
and Allied Trades Union v. Rose Brothers Home Decorating Center, Inc., 1992 WL 24036, at *2
(D.D.C. Jan. 14, 1992) (granting motion to transfer in ERISA case where witnesses and records
were all located in transferee district).  See also e.g., Nat'l Traffic Controllers Ass'n v. Dental

Gipson simply has no connection to this district or interest in prosecuting this action here.

She does not live here, none of the alleged wrongdoing took place here, and more than 99.975%

of the class members she seeks to represent live elsewhere. Absent any connection to this

district, her choice of forum should not be given any weight.

        b.        Defendants' Choice Of Forum Favors Transfer

As cases such as <u>Berenson</u> noted, the Defendants' interests in an alternative forum

supports a motion to transfer. <u>See</u> <u>Berenson</u>, 319 F. Supp. 2d at 3-4. In contrast to Gipson's

interest in her choice of forum, the Wells Fargo Defendants have a substantial and reasonable

interest in litigating this matter in the District of Minnesota.

Initially, even if this Court does not grant the Wells Fargo Defendants' motion to dismiss

under Rule 12(b)(3),[19] the Plan's forum selection clause still weighs strongly in favor of a

transfer. Courts regularly enforce forum selection clauses in the context of a § 1404 motion.

<u>E.g.</u>, <u>L & L Construction Associates, Inc. v. Slattery Skansaka, Inc.</u>, 2006 WL 1102814, at * 5

(D.D.C. 2006) (holding within the framework of § 1404, a forum selection clause becomes "the

dominant factor in the determination."); <u>2215 Fifth Street Assoc., LP v. U-Haul Int'l, Inc.</u>, 148 F.

Supp. 2d 50, 57 n.3 (D.D.C. 2001) ("when parties have agreed to a forum selection clause, the

---

<u>Plans, Inc.</u>, 407 F. Supp. 2d 1, 3 n.2 (D.D.C. 2005) (granting motion to transfer in ERISA case because the District of Columbia lacked sufficient ties to the parties, facts, and claims in the controversy); <u>Campbell v. Consolidated Building Specialties</u>, 683 F. Supp. 271, 273 (D.D.C. 1987) (granting motion to transfer in ERISA case where the daily administration of the pension fund did not take place in the district).

[19]    <u>See</u> <u>2215 Fifth Street Assoc., LP v. U-Haul Int'l, Inc.</u>, 148 F. Supp. 2d 50, 57 n.3 (D.D.C. 2001) (declining to dismiss action, but transferring under § 1404 based on forum selection clause); <u>L & L Construction Associates, Inc. v. Slattery Skansaka, Inc.</u>, 2006 WL 1102814, at * 5 (D.D.C. 2006) (dismissing action under doctrine of forum non conveniens based on forum selection clause); <u>Atlantic Tele-Network, Inc. v. Inter-American Dev. Bank</u>, 251 F. Supp. 2d 126, 137 (same).

traditional analysis is altered and . . . the clause should control absent a strong showing that it should be set aside").  See also e.g., Breeden v. Tricom Business Sys., Inc., 244 F. Supp. 2d 5, 9 (N.D.N.Y. 2003) (holding valid forum selection clause places the burden on party opposing transfer to demonstrate why transfer is not appropriate).[20]

For example, in Schoemann, the court was asked to transfer or dismiss an ERISA claim for benefits to another district pursuant to a forum selection clause.  While the Court did not reach the issue of whether this forum selection clause mandated dismissal of the action under Rule 12, it did conclude that a transfer was appropriate under § 1404(a).  It noted that the forum selection clause mandated a transfer of the action, even though the traditional transfer factors (e.g., location of witnesses, etc.) suggested that the case should remain in the plaintiff's chosen forum.  Schoemann, 447 F. Supp. 2d at 1007.  See also e.g., Cent. States Southeast and Southwest Area Pension Fund v. O'Brien & Nye Cartillage, Co., 2007 WL 625430 at * 3 (N.D. Ill. Feb. 3, 2007) (noting that forum selection clause is a crucial factor in a 1404(a) analysis in ERISA case); Rogal v. Skilstaf, Inc., 446 F. Supp. 2d 334, 338 (E.D. Pa. 2006) (same). Explaining the importance of observing forum selection clauses, the Klotz court commented that when a forum selection clause enables "one federal court [to] oversee the administration of the Plan," it "will benefit [Plan] participants who will have the advantage of one court's consistent oversight of [Plan] administration.  Efficiency results when the plan administrator can conform his administration of the Plan to the dictates of judges sitting in one courthouse rather than a multitude of judges sitting in a wide variety of jurisdictions."  See Klotz, 2007 WL 1370374 at *3.  See also e.g., Schoemann, 447 F. Supp. 2d at 1007 (noting the efficiencies that result from

---

[20]    See also Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1995); Siegel v. Homestore, Inc., 255 F. Supp. 2d 451, 456-57 (E.D. Penn. 2003); Mower Communications, Corp. v. Voipld.com, Inc., 304 F. Supp. 2d 473, 475 (W.D.N.Y. 2004).

having claims adjudicated in a single forum). Such considerations are particularly important in cases arising under ERISA, which was enacted to allow plans to be administered under uniform legal standards. Bird v. Shearson Lehman/American Express, Inc., 926 F.2d 116, 122 (2d Cir. 1991) (quoting H.R. Rep. No. 533, 93rd Cong. 1st Sess. 12 (1973)).

In addition, apart from the Plan's forum selection clause, Defendants' choice of a Minnesota forum is appropriate because the Plan is administered in Minnesota, because Minnesota is the home of the second largest number of Plan participants, and because, as noted before, a large number of the relevant witnesses reside and work in Minnesota.

This factor therefore supports transferring this matter to the District of Minnesota.

c.    The Claim Arose In The District Of Minnesota

This case should also be transferred because the claim Gipson alleges arose in the District of Minnesota, not the District of Columbia. Berenson, 319 F. Supp. 2d at 4 (noting that where the allegedly wrongful action takes place is factor in determining § 1404(a) motion).

Fundamentally, Gipson's allegations that the Wells Fargo Defendants breached their fiduciary duties and engaged in prohibited transactions by offering allegedly poorly performing funds at excessive costs involve claims of plan administration, see Boyer v. J.A. Majors Co. Employee Profit Sharing Plan, 481 F. Supp. 454 (N.D. Ga. 1979), and the Plan is administered in Minnesota. See Roe Affidavit ¶ 3. As detailed above, one of the two Plan Administrators, the investment manager, the trustee, and their staffs all live and work in Minnesota, and Gipson's claims that the Plan was imprudently managed would arise in Minnesota. See supra pp. 4-6. Further, Gipson's claim that the Institutional Trust Services Division of Wells Fargo Bank, which is also located in Minnesota, "knowingly participated" in the various breaches of fiduciary duty, see Complaint ¶ 69, also arises in Minnesota. See Roe Affidavit, ¶ 9.

In contrast, the decision to select and maintain the Wells Fargo Funds as Plan investments has no connection to the District of Columbia. None of the Fund's investment advisors, sub-advisors, or the members of the Review Committee have any connection to this forum, and the management of those funds clearly did not occur in the District of Columbia. Indeed, because she is a Maryland resident, even Gipson's alleged losses cannot be said to have occurred in this district. See supra pp. 6-8.

This factor strongly supports transferring this matter to the District of Minnesota.

d.    The Convenience of the Parties

The convenience of the parties also weighs in favor of transferring this case to Minnesota. Certainly a Minnesota venue would make sense for numerous employees of Wells Fargo who work and administer the Plan in the District of Minnesota. Further, other employees of Wells Fargo affiliates, including Review Committee members, who work in San Francisco, Los Angeles, Iowa, and other locations in the Western United States, can appear more conveniently in Minnesota (where the Plan is administered and where Wells Fargo has substantial operations) than in the District of Columbia, where they have no connection. Thus, because it is "sensible to consider the residence of witnesses employed by the parties and to consider related travel costs and lost-work issues attendant to a distant trial, when trying to make a pragmatic assessment of whether a venue transfer is warranted," this factor supports a transfer to Minnesota. Barela v. Experian Information Solutions, 2005 WL 770629, * 4 (N.D. Ill. 2005).[21]

---

[21]    See Trans-United Indus. v. Renard Linoleum & Ruc Co., 212 F. Supp. 373 (D.C. Pa. 1962) (transferring case to avoid disrupting defendant's business by requiring a prolonged absence of executives).

In contrast, Gipson's interest in a District of Columbia venue is minimal. Given the nature of this action, she will spend little time on this matter, and transferring the case to the District of Minnesota will have little impact upon her. Further, because Plaintiffs' counsel (which has agreed to fund this class action litigation) litigates cases throughout the United States, it can readily litigate this matter in Minnesota. See supra p.11. Transferring this matter will thus have little to no adverse effect on plaintiff, as well 99.975% of future class members who do not live in the District of Columbia. See Rupert, 2007 WL 2025233 * 6 (noting that where a firm has agreed to represent a large putative class of ERISA plan participants on contingency, transfer will work no harm on the plaintiffs).

The convenience of the parties therefore supports transferring this matter to the District of Minnesota.

e.    The Convenience Of The Witnesses

The convenience of the non-party witnesses also supports transferring this matter to Minnesota. Litigating this matter in Minnesota will be most convenient for the former Wells Fargo employees who worked with the administration of the Plan or provided investment advice to the Review Committee. For example, Debbie Harvieux, a Minnesota resident, who was previously the manager of Wells Fargo's retirement plans, no longer works for Wells Fargo, see Roe Affidavit, ¶ 5, and is thus within the subpoena power of the Minnesota court. Although the conclusory allegations in the Complaint make it difficult to forecast exactly who will have pertinent information, the former Wells Fargo employees who may emerge as witnesses will most likely live in Minnesota where the Plan is administered. Thus, transferring this case also serves the convenience of non-party witnesses. Petersen v. Union Pacific RR Co. 2006 U.S.

Dist. LEXIS 25061 at *7-8 (N.D. Ill. April 19, 2006) (noting that ability to compel third-party witnesses to testify at trial is a crucial factor supporting transfer of a case).

Litigating this matter in Minnesota will also be more convenient for other witnesses, such as SunGard, which operates out of Arkansas, as well as employees of the managers and sub-advisors of the Wells Fargo Funds which operate out of California and Minnesota. See Roe Affidavit, ¶ 12, 14, 16-19. Although these and other witnesses do not reside in Minnesota, they can more conveniently appear there than in Washington, D.C. This factor therefore also supports transferring this case to the District of Minnesota.

f.    The Ease Of Access To Sources Of Proof.

As noted, not only is the vast majority of the relevant witnesses in the District of Minnesota, but the vast majority of the documentary evidence (including electronic data) is in that district as well. See Roe Affidavit, ¶ 3, 8. See Berenson, 319 F. Supp. 2d at 4 ("Turning to the last private consideration, *i.e.,* ease of access to the sources of proof, the Court finds that Massachusetts is the preferable forum because key witnesses and most of the documentary evidence is located there."). This factor therefore also supports transferring this matter to the District of Minnesota.

3.    The Interests Of Justice Also Support Transferring This Matter To The District Of Minnesota.

In examining whether the "interests of justice" support a transfer, Courts in this district examine three so-called "public factors": (1) the transferee court's familiarly with the governing law; (2) the relative congestion of the calendars of the potential transferor and the transferee

courts; and (3) the local interest in deciding local controversies at home. See Liban v. Churchey Group II, LLC, 305 F. Supp. 2d 136, 136 (D.D.C. 2004) (citing Trout Unlimited, 944 F. Supp. at 16). While factors (1)[22] and (2)[23] support neither party, Minnesota has a strong local interest in deciding this local controversy in the district where the plan is administered and a substantial number of its participants reside.

For the reasons discussed above, the interests of justice support transferring this matter to the District of Minnesota. Because the Plan is administered in Minnesota and because such a large contingent of Wells Fargo employees live in Minnesota (second only to California), there is a strong local interest in litigating this matter in Minnesota. Also, as noted earlier, the Plan's forum selection clause also provides a strong basis for a transfer. As the Klotz and Schoemann cases noted, the Plan and its participants have a strong interest in having all Plan-based disputes settled in a single forum, under the same circuit's law. See supra p. 20.

## IV.    CONCLUSION

For the above reasons, the Wells Fargo Defendants request that this Court grant its motion to dismiss (or transfer) this action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3)

---

[22]    Because this matter seeks relief under ERISA, which is a uniform federal law, the familiarity of the two courts with the governing law should not be a factor to be analyzed. See Sanders v. State St. Bank & Trust Co. 813 F. Supp. 529, 536-37 (S.D. Tex. 1993).

[23]    Based on statistics produced by the Federal Judiciary, the median time from filing to disposition has historically been similar in both the District of Minnesota and the District of the District of Columbia over the past five years. See http://www.uscourts.gov/cgi-bin/cmsd2006.pl. Although statistics reflect an increase in the disposition time for Minnesota in 2006, that appears to be an anomaly resulting from the dismissal of several thousand multi-district litigation cases originally filed in 2001. See http://www.mnd.uscourts.gov/Baycol_Mdl/transcripts/121306TeleConf.PDF.

or, in the alternative, transfer this case to the District of Minnesota pursuant to either 28 U.S.C. §

1404(a) or § 1406.


Dated:  January 31, 2008                         DORSEY & WHITNEY LLP



                                                 By:  ___s/Creighton R. Magid_____
                                                    Creighton R. Magid (DC#1071807)
                                                 1050 Connecticut Avenue NW
                                                 Suite 1250
                                                 Washington, D.C. 20036
                                                 (202) 442-3000
                                                 magid.chip@dorsey.com

                                                 AND

                                                    Stephen P. Lucke *(admitted pro hac vice)*
                                                    Andrew J. Holly *(admitted pro hac vice)*
                                                 Suite 1500, 50 South Sixth Street
                                                 Minneapolis, MN 55402-1498
                                                 (612) 340-2600 (telephone)
                                                 (612) 340-2868 (facsimile)
                                                 lucke.stephen@dorsey.com
                                                 holly.andrew@dorsey.com