UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **YVONNE GIPSON,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 07-1970  (JDB)** |
| **WELLS FARGO & CO., et al.,** | |
| **Defendants.** | |

## MEMORANDUM OPINION

Plaintiff Yvonne Gipson brings this class action against defendants Wells Fargo & Company, Wells Fargo Bank, N.A., and the Employee Benefit Review Committee (collectively "Wells Fargo") pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq. Gipson briefly participated in an employee contribution 401(k) pension plan ("Plan") administered by Wells Fargo and claims that its investment funds were mismanaged. Based on a forum selection clause, Wells Fargo has moved to dismiss the complaint for improper venue under Fed. R. Civ. P. 12(b)(3) or, in the alternative, to transfer the case to the District of Minnesota pursuant to 28 U.S.C. § 1404(a). Upon careful consideration of the motion and the parties' memoranda, the applicable law, and the entire record, the Court will deny Wells Fargo's motion to dismiss but will grant the motion to transfer this case to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a).

## BACKGROUND

Gipson worked for Wells Fargo from 1998 to 2004, during which time she participated in the company's 401(k) Plan. Pl.'s Opp'n Mot. Dismiss at 1. Although it was originally disputed

whether Gipson ever worked in the District of Columbia for Wells Fargo, it is now conceded that, even though Gipson was based out of an office in Greenbelt, Maryland, she actually worked from her home in the District of Columbia through 2002 and out of a facility leased by Wells Fargo in the District of Columbia until 2004. Defs.' Reply Supp. Mot. Dismiss at 7 n.6. Gipson currently lives in Annapolis, Maryland. Compl. ¶ 16.

Wells Fargo is a Delaware corporation with its principal place of business in California. Defs.' Mot. Dismiss at 7. However, the Plan in question is administered and managed by Wells Fargo staff in Minneapolis, Minnesota. Id. at 3. Furthermore, Minnesota is the district where claims for benefits must be filed, where documents and information about the Plan can be obtained, and where the Plan Trustee is located. Id. The Plan documents include a forum selection clause which requires that "all controversies, disputes, and claims arising" under the Plan "be submitted to the United States District Court for the District of Minnesota." Id. This clause has been included in the Plan since 1976. Id. Despite this explicit venue provision, Gipson has filed this class action suit in the District of Columbia, prompting Wells Fargo's motion to dismiss or transfer the case.

Gipson alleges that from 2001 to the present Wells Fargo failed to "exercise the required care, skill, prudence, and diligence in investing the assets of the 401(k) Plan." Compl. ¶ 8. Specifically, she contends that Wells Fargo improperly invested in funds managed by its own affiliates to generate revenue, while ignoring the impact of higher fees and mediocre returns in comparison to unaffiliated funds. Id. Based on the forum selection clause and convenience considerations, Wells Fargo has filed a motion to dismiss for improper venue under Fed. R. Civ.

-2-

P. 12(b)(3) or, in the alterative, to transfer to the District of Minnesota pursuant to 28 U.S.C. §
1404(a).

## STANDARD OF REVIEW

A motion pursuant to Fed. R. Civ. P. 12(b)(3) seeks to dismiss a case if venue is improper
or inconvenient in the chosen forum. "Because it is the plaintiff's obligation to institute the action
in a permissible forum, the plaintiff usually bears the burden of establishing that venue is
proper." Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003); 15 Charles Alan Wright et al.,
Fed. Prac. & Proc. § 3826, at 258 (2d ed. 1986 & Supp. 2006) ("[W]hen [an] objection has been
raised, the burden is on the plaintiff to establish that the district he chose is a proper venue.").
Under 28 U.S.C. § 1406(a), dismissal or transfer of a case is warranted where there is a venue
defect. Even if the venue chosen by the plaintiff is valid, a court is still authorized to transfer the
case to another jurisdiction "[f]or the convenience of parties and witnesses, in the interest of
justice," under 28 U.S.C. § 1404(a). Unless there are pertinent factual disputes to resolve, a
challenge to venue presents a pure question of law.

In an ERISA claim, venue is appropriate "where the plan is administered, where the
breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). "A
defendant that is a corporation shall be deemed to reside in any judicial district in which it is
subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). The
special venue provision for ERISA expands the normal scope of venue offered under § 1391.
Int'l Bhd. of Painters and Allied Trades Union v. Rose Bros. Home Decorating Ctr., Inc., 1992
WL 24036, at *2 (D.D.C. Jan. 14, 1992). If the district in which the action is brought does not
meet the requirements of § 1132(e)(2), then the chosen venue is improper and the Court may

either dismiss "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The decision whether dismissal or transfer is "in the interest of justice" is committed to the sound discretion of the district court. Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983). Generally, the interest of justice requires transferring such cases to the appropriate judicial district rather than dismissing them. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67 (1962); James v. Booz-Allen, 227 F. Supp. 2d 16, 20 (D.D.C. 2002).

To transfer a case, the transferor court must find that the intended transferee court is one in which the plaintiff could originally have brought the action. See 28 U.S.C. § 1406(a). Although the D.C. Circuit does not appear to have addressed the meaning of the phrase "in which [a case] could have been brought," the phrase has been interpreted to mean that the transferee court must have both personal jurisdiction and venue. Davis v. Am. Soc'y of Civil Eng'rs, 290 F. Supp. 2d 116, 120 (D.D.C. 2003); 17 Wright, et al., Fed. Prac. & Proc. § 3827; 17 Moore's Fed. Prac., § 111.33[1] (3d ed. 2008) (citing Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993) (observing that the district court properly denied transfer to a district in which venue was improper), and Harman v. Pauley, 522 F. Supp. 1130, 1133 (S.D.W.Va. 1981) (noting that "[t]he transferee court must have or be able to obtain personal jurisdiction over the defendant")).

## DISCUSSION

### I.    Forum Selection Clause

As a preliminary matter, the Plan forum selection clause clearly states that litigation relating to the Plan should be conducted in the United States District Court for the District of Minnesota. It is broadly written and sufficiently encompasses the dispute before this Court. See,

-4-

e.g., Worldwide Network Servs., LLC v. Dyncorp Int'l, 496 F. Supp. 2d 59, 63 (D.D.C. 2007) (observing that "forum selection clauses have been found to encompass even non-contractual causes of action"). But although there is agreement over the applicability of the clause, Gipson questions its impact.

The Supreme Court has consistently recognized forum selection clauses as legitimate and has required deference in their enforcement. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 12 (1972) ("[forum-selection] clauses are prima facie valid" and "should be honored by the parties and enforced by the courts"). This presumption in favor of forum selection clauses even extends to those included in non-negotiated boilerplate contracts. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991). Moreover, the District of Columbia has affirmed this liberal stance towards contractual agreements governing venue. See Furbee v. Vantage Press, 464 F.2d 835, 836 (D.C. Cir. 1972) (concluding that forum selection provisions are commonplace and "should be respected as the responsible expression of the intention of the parties"); see also Millanovich v. Costa Crociere, S.p.A., 954 F.2d 763, 768 (D.C. Cir. 1992) (concluding that in light of M/S Bremen and Carnival the courts should honor contractual provisions for forum and choice-of-law); Marra v. Papandreou, 59 F. Supp. 2d 65, 70 (D.D.C. 1999) ("presumption in favor of enforcing a forum selection clause applies even if the clause was not the product of negotiation"), aff'd, 216 F.3d 1119 (D.C. Cir. 2000). This Court has recognized that "when parties have agreed to a forum selection clause, the traditional analysis is altered and . . . the clause should control absent a strong showing it should be set aside." 2215 Fifth St. Assoc. v. U-Haul Int'l, Inc., 148 F. Supp. 2d 50, 58 (D.D.C. 2001).

The presumption for enforcement of forum selection clauses is not absolute, however, as it is mitigated by consideration of compelling countervailing interests. Forum selection clauses are "presumptively valid" unless the resisting party can "clearly show that enforcement would be unreasonable and unjust [or contrary to public policy of the forum], or that the clause was invalid for such reasons as fraud and overreaching." M/S Bremen, 407 U.S. at 15. There is no allegation or evidence of coercion or fraud here and since the provision has been in the Plan for decades it can hardly be considered the product of bad faith. Furthermore, enforcement of the forum selection clause would not contravene a strong public policy. Instead, Gipson argues that the forum selection clause should be nullified simply because it is "unreasonable and unjust." The Supreme Court has clarified that a forum selection clause can only be invalidated under this exception if the party seeking to avoid the clause can show that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." Id. at 18.

Gipson asserts that such a situation exists here and that enforcement of the clause would effectively deprive her of her day in court. Pl.'s Opp'n Mot. Dismiss at 3. That conclusion is based on the assumption that the case law of the Eighth Circuit would effectively eliminate her standing in the suit since she has previously liquidated her interest in the Plan. See Adamson v. Armco, Inc., 44 F.3d 650, 654-55 (8th Cir. 1995) (holding that former employees do not have standing for ERISA claims). However, this analysis fails to incorporate the recent Supreme Court decision in Larue v. Dewolff, Boberg & Assocs., Inc., 128 S. Ct. 1020, 1026 n.6 (2008), which holds that an ERISA claim is not "moot because petitioner is no longer a participant in the Plan." A "participant" under § 3(7) of ERISA thus includes former employees with colorable claims for

benefits. Id.; 29 U.S.C. § 1002(7). This precedent permits Gipson to argue that, even though she is no longer an active participant of the Plan, she still has standing. The mere prospect that Wells Fargo may seek a dismissal, based on the Adamson precedent, once the case is transferred to the District of Minnesota, does not effectively deny the plaintiff her "day in court." Even if the district court in Minnesota were to grant dismissal, Gipson still has the recourse of appeal. Ultimately, and in any event, the mere belief that the chosen forum has unfavorable precedents cannot be the basis for avoiding a forum selection clause. See New Moon Shipping Co., Ltd. v. Man B & W Diesel Ag., 121 F.3d 24, 33 (2d. Cir. 1997) (noting that the Supreme Court's exception to enforcement of forum selection clauses in M/S Bremen "focuses on the inconvenience of the chosen forum rather than the effect of applying the law of the chosen forum").

The courts have thus established a fairly high threshold for avoiding contractual commitments for venue. See Carnival Cruise Lines, 499 U.S. at 591-92 (finding that plaintiffs failed to satisfy the "heavy burden of proof" required to invalidate clause for "inconvenience"). For example, in Commerce Consultants Int'l, Inc. v. Vetrene Riunite, S.P.A., the Court did not believe that reliance on litigation in another country, even in light of serious doubts about the fairness of jurisdictional rules of discovery, would deprive the plaintiff of a "day in court." 867 F.2d 697, 700 (D.C. Cir. 1989); see also Overseas Partners, Inc., v. Progen Musavirlik ve Yonetim Hizmetleri, Ltd., 15 F. Supp. 2d 47, 55 (D.D.C. 1998) (concluding that physical inconvenience in reaching a far away forum in another country is not sufficient). Courts have even enforced forum selection clauses despite the fact that the statue of limitations had run in the transferee forum. See, e.g., Joyner v. Reno, 466 F. Supp. 2d 31, 37 (D.D.C. 2006); Packer v.

Kaiser Foundation Health Plan, 728 F. Supp. 8, 12 (D.D.C. 1989). Gipson fails to demonstrate

that enforcement of this clause will create the kind of grave inconvenience needed to abrogate a

contractual agreement.  In light of these considerations, the forum selection clause should not be

disregarded.

Violation of a valid forum selection clause can be remedied through dismissal of the case

for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and § 1406(a) or though transfer

pursuant to § 1404. Although the choice of an improper venue sometimes warrants dismissal,

"interest of justice" considerations more often require that the case be transferred under 28

U.S.C. § 1406. See, e.g., Trenwyth Indus., Inc. v. Burns and Russell Co., 701 F. Supp. 852, 856-

57 (D.D.C. 1988). Dismissal instead of transfer for improper venue is typically used when a

forum selection clause specifies a non-U.S. jurisdiction. See, e.g., Marra v. Papandreou, 216 F.3d

1119, 1123 (D.C. Cir. 2000); Overseas Partners, 15 F. Supp. 2d at 55; Commerce Consultants,

867 F.2d at 700. Here, even if the attempt to lay venue in this district is a stretch, it is not

"unreasonable" enough to warrant outright dismissal. See, e.g., Trenwyth Indus., 701 F. Supp. at

857. Furthermore, a forum selection clause is only a contractual agreement about venue; it may

warrant transfer of the case but it should not definitively compel dismissal. See Nat'l

Micrographics Sys., Inc. v. Canon U.S.A., Inc., 825 F. Supp. 671, 679 (D.N.J. 1993). Transfer

avoids delay and the inconvenience of having to re-file the case. Therefore, the motion to dismiss

pursuant to Rule 12(b)(3) based on the forum selection clause in the Plan is denied.

## II.    § 1404 Transfer

The Supreme Court has concluded that 28 U.S.C. § 1404(a) controls whether to transfer a

case to another jurisdiction when a forum selection clause is involved. Stewart Org., Inc. v.

Ricoh Corp., 487 U.S. 22, 29 (1988). Transfer of venue under § 1404(a) is appropriate if (1) venue is proper in the court *in which* transfer is sought; (2) venue is proper in the court *to which* transfer is sought; (3) it is for the convenience of the parties and witnesses; and (4) it is in the interest of justice. 28 U.S.C. § 1404(a); see, e.g., Nat'l Traffic Controllers Ass'n v. Dental Plans, Inc., 407 F. Supp. 2d 1, 3 (D.D.C. 2005). Therefore, even if venue is appropriate in the District of Columbia, if Minnesota is a valid forum and convenient for the parties, and the interest of justice would best be served by enforcing the parties' forum selection clause, then transfer to the District of Minnesota pursuant to § 1404(a) is warranted. See, e.g., 2215 Fifth St., 148 F. Supp. 2d at 59; Kotan v. Pizza Outlet, 400 F. Supp. 2d 44, 51 (D.D.C. 2005); Nat'l Traffic Controllers, 407 F. Supp. 2d at 3 (transferring an ERISA claim).

## A.      Venue Considerations

For an ERISA claim, venue is proper "where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2).  Under this provision, defendants can be "found" where they have "minimum contacts" from the regular conduct of business. See I.A.M. Nat'l Pension Fund Benefit Plan v. Wakefield Indus., Inc., 699 F.2d 1254, 1257 (D.C. Cir. 1983). Gipson worked for Wells Fargo in the District of Columbia and her employment is connected to her claims; hence, Wells Fargo does employ people and conduct business in the District of Columbia, even if its connection to this jurisdiction is fairly limited. Although there are no employees with responsibility for investment decisions here, Wells Fargo maintains the "minimum contacts" necessary to reasonably anticipate being subject to personal jurisdiction in the District of Columbia. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 318-19 (1945); Burger King v. Rudzewicz, 471 U.S. 462, 474 (1985). Therefore, venue may

properly lie in the District of Columbia.[1] However, because the Plan is administered in

Minnesota, the alleged breach of fiduciary duty took place in Minnesota and all the defendants

either reside or may be found in Minnesota, venue also properly lies in the District of Minnesota.

The Court must therefore assess whether the convenience of the parties and the interest of justice

warrant transfer to the District of Minnesota.

Once the validity of venue is determined, "a motion to transfer under § 1404(a) … calls

on the district court to weigh in the balance a number of case-specific factors" which encompass

convenience and fairness. Stewart Org., 487 U.S. at 29. This determination is entrusted to the

discretion of the district court on a case-by-case basis. Van Dusen v. Barrack, 376 U.S. 612, 622

(1964). The Court must consider both private convenience factors for the parties involved and

"public-interest factors of systemic integrity and fairness" which fall "under the heading of the

interest of justice." Stewart Org., 487 U.S. at 30.

> The private interest considerations include: (1) the plaintiffs' choice of
> forum, unless the balance of convenience is strongly in favor of the defendants;
> (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the
> convenience of the parties; (5) the convenience of the witnesses of the plaintiff
> and defendant, but only to the extent that the witnesses may actually be
> unavailable for trial in one of the fora; and (6) the ease of access to sources of
> proof. The public interest considerations include: (1) the transferee's familiarity
> with the governing laws; (2) the relative congestion of the calendars of the
> potential transferee and transferor courts; and (3) the local interest in deciding
> local controversies at home.

Wilderness Soc. v. Babbit, 104 F. Supp. 2d 10, 12 (D.D.C. 2000) (quoting Trout

Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996) (footnotes

omitted)).

---

[1] Even if venue did not lie in the District of Columbia, in which case § 1404(a) would not apply, this case should
nonetheless be transferred to the District of Minnesota pursuant to 28 U.S.C. § 1406(a) in the interest of justice.

B.    **Private Interest Considerations**

1.    **Plaintiff's Choice of Forum**

The Court normally gives "special weight to a plaintiff's choice of forum in ERISA cases." Flynn v. Veazey Constr. Corp., 310 F. Supp. 2d 186, 193 (D.D.C. 2004). However, this deference is not absolute. See, e.g., Nat'l Traffic Controllers, 407 F. Supp. 2d at 3 (granting motion to transfer in ERISA case because the district lacked sufficient connection to the claim); Int'l Bhd. of Painters, 1992 WL 24036, at *2 (granting motion to transfer in ERISA case where witnesses and records were all located in transferee district); Campbell v. Consol. Bldg. Specialties, 683 F. Supp. 271, 273 (D.D.C. 1987) (granting motion to transfer in ERISA case where administration did not take place in the district). In Flynn, the court refused to transfer an ERISA case because the plan was administered in the district where it was filed. 310 F. Supp. 2d at 192. Here, in contrast, not only does the Plan lack this significant nexus to the District of Columbia but it contains an explicit forum selection clause that requires that the claim be filed elsewhere. Furthermore, unlike in this case, transfer was a closer question in Flynn since the relevant witnesses and evidence were split between the two forums. Id. at 193.[2]

More generally, although the plaintiff's choice of forum is normally given substantial deference, that is not always true. For example, "in a class action suit in which

---

[2]In Flynn, venue was based on "where the plan is administered" while in this case District of Columbia venue would be based on "where the defendant resides or may be found." 29 U.S.C. § 1132(e)(2). This distinction is important because forcing litigation of claims where the employer may be found instead of where the plan is administered "would undermine the financial integrity of the funds, defeating the goal of efficient administration of ERISA plans." Flynn, 310 F. Supp. 2d at 194. Courts assign special relevance to the district in which the plan is administered. Id. at 193. By encouraging the filing of claims specifically "in the district where the plan is administered, the special venue provision makes collection efforts efficient, economical, and inexpensive for ERISA funds, fulfilling Congress's intent to protect the financial integrity of such funds." Id.

the plaintiffs propose to represent a class of potential plaintiffs who reside throughout the country, the plaintiffs' choice of forum deserves less weight than it is typically given." Berenson v. Nat'l Fin. Servs., 319 F. Supp. 2d 1, 3 (D.D.C. 2004). In terms of members of the Wells Fargo Plan, out of "184,459 participants . . . only 47 live in the District of Columbia," while the second largest concentration of Plan participants lives in Minnesota with a total of 21,360 participants. Defs.' Mot. Dismiss at 7.  Furthermore, deference to the plaintiff's choice of forum is misplaced when the venue lacks sufficient ties to the "material events that constitute the factual predicate for the plaintiff's claims." Kafack v. Primerica Life Ins. Co., 934 F. Supp. 3, 6 (D.D.C. 1996). Courts have utilized "diminished consideration" when the chosen "forum has no meaningful ties to the controversy and no particular interest in the parties or their subject matter." Sheldon v. Nat'l R.R. Passenger Corp., 355 F. Supp. 2d 174, 178 (D.D.C. 2005). Finally, while Gipson lived and worked in D.C. for several years, she is no longer a resident of the forum, and hence her forum choice is entitled to less deference. See Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001) ("[E]ven though a court should typically give deference to a plaintiff's choice of forum, it need give substantially less deference when the forum preferred by the plaintiff is not his home forum"); Kotan, 400 F. Supp. 2d at 49 ("less deference is granted to a plaintiff's choice of forum if it is not the plaintiff's home forum"); see also Piper Aircraft v. Reyno, 454 U.S. 235, 255-56 (1981). Here, practically none of the class members represented live in the District of Columbia, none of the alleged wrongdoing took place in the District of Columbia, and the plaintiff does

not currently reside in the District of Columbia. In light of these considerations, Gipson's

choice of forum is certainly not controlling.

### 2.    Defendants' Choice of Forum

In contrast, substantial weight should be given to Wells Fargo's choice of forum,

as reflected in the terms of the Plan. A forum selection clause is a clear indication of

venue preference and is in some sense an "ex ante agreement to waive venue objections to

a particular forum." Marra, 216 F.3d at 1123. "The presence of a forum-selection clause

. . . will be a significant factor that figures centrally in the district court's calculus."

Stewart Org., 487 U.S. at 29. Here, the Plan forum selection clause weighs strongly in

favor of transfer to the District of Minnesota. See, e.g., L & L Constr. Assocs., Inc. v.

Slattery Skansaka, Inc., 2006 WL 1102814, at *5 (D.D.C. Mar. 31, 2006) (holding that a

forum selection clause is "the dominant factor in the [§ 1404 transfer] determination");

2215 Fifth St., 148 F. Supp. 2d at 58 ("when parties have agreed to a forum selection

clause, the traditional analysis is altered and . . . the clause should control absent a strong

showing that it should be set aside"); Worldwide Network Servs., 496 F. Supp. 2d at 62

("generally forum selection clauses are granted significant weight in venue transfer

motions").

### 3.    Where the Claim Arose

The Court also considers whether there is a nexus between the underlying transactions

and the forum. See, e.g., Nat'l Traffic Controllers, 407 F. Supp. 2d at 3; Campbell, 683 F. Supp.

at 273. In this case, the Plan is administered in Minnesota and the alleged breach of fiduciary

duty took place in Minnesota; hence, that is where the claim arises. See, e.g., Berenson, 319 F.

Supp. 2d at 4 (concluding that the claim arises where the actions which caused the alleged

economic harm took place); Nat'l Traffic Controllers, 407 F. Supp. at 3 (transferring ERISA

claim to the district where the plan was administered). The investment manager, the trustee and

relevant staff all work in Minnesota, so allegations of imprudent management would arise there

as well. Decisions to select and invest in various funds have no connection whatsoever to the

District of Columbia. The great majority of the activity involved in Gipson's allegations --

including researching, selecting, monitoring, and accounting for the Plan's investment options

and associated fees -- took place in Minnesota. Defs.' Mot. Dismiss at 5.

### 4.    Convenience and Access to Sources of Proof

With respect to convenience factors for all parties involved, Minnesota is the most

practical venue. Minnesota is clearly more convenient for the numerous employees of Wells

Fargo involved in the dispute. Moreover, litigating in Minnesota does not present an undue

hardship for Gipson given the nature of class action law suits and her lawyer's agreement to fund

the litigation. See Federman Assocs. v. Paradigm Med. Indus., Inc., 1997 WL 811539, at *5

(S.D.N.Y. 1997) (noting that transfer would not impose an undue burden on a plaintiff where the

plaintiff's attorney was working on a contingency-fee basis). The key witnesses and evidence

involved in the alleged fiduciary breach are in Minnesota.[3] The convenience analysis must

balance the potential travel cost and lost work impact for all relevant parties. Gipson contends

that the inconvenience of the District of Columbia venue for Wells Fargo is irrelevant because

the odds of this dispute reaching trial are low; however, this argument is speculative and

---

[3]Even if modern technology such as e-mail, scanning and efficient air travel has made the choice of venue based on
the location of evidence less significant, the physical location is still relevant for the convenience determination.

unconvincing. In light of these considerations, the convenience factors weigh in favor of the Minnesota venue.

### C.    Public Interest Considerations

Weighing the public interest factors, Minnesota has a strong local interest in deciding this controversy because the second highest number of plan participants live in Minnesota and it is the district where Wells Fargo administers the Plan. The interests of justice and efficiency, moreover, encourage the enforcement of the forum selection clause and reliance on a single body of law to resolve disputes. The Plan participants will benefit from one court's consistent oversight. The Plan administrators also benefit from the certainty of uniform legal standards by being able to conform their behavior to the rules of one body of precedent. See Carnival, 499 U.S. at 593 (mentioning that enforcement of "a clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources").

The forum selection clause is significant here, and it requires that all disputes relating to the Plan be filed in the District of Minnesota. But notwithstanding the forum selection clause, the District of Minnesota is still the most appropriate venue because the Plan is administered in Minnesota, the events and activities that give rise to the alleged fiduciary breach took place in Minnesota, the majority of the relevant witnesses will be situated in Minnesota, and a significant proportion of Plan participants reside in Minnesota. The public interest factors therefore strongly favor transfer.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court concludes that the forum selection clause is valid and enforceable. The Court will therefore deny defendants' motion to dismiss for improper venue under Rule 12(b)(3) but will grant defendants' motion to transfer this action to the United States District Court for District of Minnesota pursuant to 28 U.S.C. § 1404(a). A separate order accompanies this memorandum opinion.

_____
/s/
JOHN D. BATES
United States District Judge

Dated: <u>June 24, 2008</u>